IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZT IP, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>VMWARE, INC.,<br><br>    Defendant. | Case No. 3:22-cv-970-X<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANT VMWARE, INC.'S
<u>MOTION FOR RULE 11 SANCTIONS</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF FACTS .............................................................................................. 2
    A. The Parties, ZT and VMware ............................................................................... 2
    B. ZT Files Suit, Relying Extensively on the 2002 ESX 1.5 User Manual ................ 2
    C. VMware Repeatedly Tells ZT that Its Patent Is Invalid and that Damages Are Unavailable. .................................................................................................. 3
    D. ZT Finally Dismisses Its Complaint. .................................................................... 5
III. LEGAL STANDARD ..................................................................................................... 6
    A. Sanctionable Conduct Under Federal Rule of Civil Procedure 11 ....................... 6
IV. ARGUMENT ................................................................................................................... 7
    A. The Court Should Sanction ZT's Counsel for Failing to Conduct an Adequate Pre-Filing Investigation. ....................................................................... 7
        1. ZT Did Not Adequately Review Public Materials Showing that ESX 1.5 Predates the '583 Patent. ........................................................... 7
        2. ZT Did Not Adequately Review Public Materials Showing VMware Removed the Service Console Essential to its Infringement Theory. ................................................................................ 9
        3. ZT Ignored the Proof of Non-Infringement and No Damages. .................. 9
        4. The Court Should Sanction ZT's Counsel and Award VMware Attorneys' Fees and Costs. ....................................................................... 10
V. CONCLUSION .............................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005)..................................................................................................11

*Budri v. FirstFleet Inc.*,
   No. 19-cv-0409, 2019 U.S. Dist. LEXIS 188250 (N.D. Tex. Sep. 20, 2019) ...........................4

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991)..................................................................................................................6

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)..................................................................................................................6

*Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
   No. 12-cv-764, 2015 U.S. Dist. LEXIS 34784 (E.D. Tex. Mar. 20, 2015) ...............................4

*Google LLC v. IPA Techs. Inc.*,
   34 F.4th 1081 (Fed. Cir. 2022) .................................................................................................8

*Grynberg v. Ivanhoe Energy, Inc.*,
   663 F. Supp. 2d 1022 (D. Colo. 2009).....................................................................................12

*Hostingxtreme Ventures, LLC v. Bespoke Grp., LLC*,
   No. 14-cv-1471, 2017 U.S. Dist. LEXIS 203277 (N.D. Tex. Nov. 13, 2017).........................4

*Marrin v. Griffin*,
   599 F.3d 1290 (Fed. Cir. 2010).................................................................................................7

*Polaroid Corp. v. Eastman Kodak Co.*,
   789 F.2d 1556 (Fed. Cir. 1986).................................................................................................7

*Scott v. Wollney*,
   No. 20-cv-2825, 2021 U.S. Dist. LEXIS 200868 (N.D. Tex. Sep. 16, 2021) ..........................4

*Skidmore Energy, Inc. v. KPMG*,
   455 F.3d 564 (5th Cir. 2006) ..............................................................................................10, 11

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
   753 F.3d 1291 (Fed. Cir. 2014).................................................................................................6

*Stewart v. RCA Corp.*,
   790 F.2d 624 (7th Cir. 1986) .....................................................................................................9

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000) .................................................................................. *passim*

*WPEM, LLC v. SOTI Inc.*,
   No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *aff'd*,
   837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021) ....................... *passim*

**Statutes**

35 U.S.C. § 100 ........................................................................................................................ 8

35 U.S.C. § 285 ...................................................................................................................... 11

35 U.S.C. § 286 .................................................................................................................... 1, 9

**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 10, 11

I.      INTRODUCTION

The Federal Circuit has warned that "[a] patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (referring to Fed. R. Civ. P. 11). Here, ZT IP, LLC ("ZT") and its counsel ignored that warning by filing its Complaint against VMware, Inc. ("VMware").

ZT's Complaint suffered from two obvious defects. First, ZT accused certain VMware functionality of infringing U.S. Patent No. 7,647,583 (the "'583 patent"). But the accused ESX functionality predates the '583 patent and thus could not infringe. Second, VMware removed the accused ESX functionality over a decade ago. This means that, even if ZT's infringement theory were plausible (which it is not), ZT could not recover damages under 35 U.S.C. § 286.

ZT and its counsel should have known of both defects pre-suit. Publicly available materials readily confirm that the accused ESX technology predates the '583 patent. And publicly available materials readily confirm that VMware removed this technology in 2010.

By filing its Complaint, ZT and its counsel violated Rule 11 twice over. Having been chastised for the same conduct only two years ago, ZT's counsel should have known better. *See WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3-6, 8 (E.D. Tex. Feb. 4, 2020) (awarding $179,000 in attorneys' fees for "conduct[ing] *no* pre-filing investigation into the validity and enforceability of the Asserted Patent *at all*"), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021).[1]

Post-filing, ZT and its counsel undeniably knew of these defects. Before serving this

---

[1] Judge Gilstrap's award of fees against ZT's counsel in *WPEM* on identical facts and the Federal Circuit's affirmance of that award are attached as Exhibits 1 and 2, respectively, to the Declaration of Diek Van Nort ("Van Nort Decl.").

motion, VMware's in-house counsel met with ZT and provided the public evidence showing that the accused ESX technology predated the '583 patent and had been removed long ago. Not only did ZT fail to respond to that evidence, ZT skipped a meeting that it scheduled to discuss the evidence. ZT then ignored correspondence from VMware's outside counsel reiterating—again—the fatal defects with its case and service of this Rule 11 motion.

ZT had no basis for filing this lawsuit and even less of a basis for maintaining it. ZT dismissed this suit with prejudice only *after* VMware filed a motion to dismiss, *after* VMware served a Rule 11 motion, and *after* the twenty-one-day safe harbor under Rule 11 expired. ZT's conduct was not harmless; its maintenance of this suit forced VMware to incur $104,915 in attorneys' fees preparing and filing its motion to dismiss, preparing and serving this Rule 11 motion, and trying to convince ZT of the frivolous nature of this lawsuit. In view of ZT's failure to conduct an adequate pre-filing investigation and maintenance of this suit despite VMware's repeated requests to dismiss, VMware asks that the Court sanction ZT and its counsel under Rule 11 and award VMware its attorneys' fees and costs.

## II.     STATEMENT OF FACTS

### A.     The Parties, ZT and VMware

ZT is a limited liability company formed in Austin, Texas on February 28, 2022, three months before filing the Complaint in this action. (Van Nort Decl., Ex. 3.) VMware is a market-leading cloud computing and virtualization technology company based in Palo Alto, California. (Declaration of Daniel Lin ("Lin Decl.") ¶ 2.)

### B.     ZT Files Suit, Relying Extensively on the 2002 ESX 1.5 User Manual.

On May 2, 2022, ZT sued VMware, alleging that ESX 1.5 infringes the '583 patent by "maintain[ing], operat[ing], and administer[ing] systems, products, and services that facilitate developing real time operating system [*sic*]." (ECF No. 1 ¶ 9.) In a claim chart appended to the

Complaint, ZT identified VMware's ESX server version 1.5 ("ESX 1.5") as the accused product. Neither the Complaint nor the claim chat accuses other products. (ECF No. 1, Ex. A.)

### C. VMware Repeatedly Tells ZT that Its Patent Is Invalid and that Damages Are Unavailable.

After ZT filed suit, VMware repeatedly advised ZT of the deficiencies in its Complaint. During a June 1, 2022 Zoom call, VMware's in-house counsel presented documents showing that ESX 1.5 was commercially released over a year before the '583 patent's priority date. (Lin Decl. ¶¶ 5–9.) VMware's in-house counsel explained that the '583 patent therefore is invalid. (*See id.* ¶¶ 7–8.) VMware's in-house counsel further explained that VMware had removed the ESX 1.5 Service Console (an essential part to ZT's infringement theory) in 2010, precluding any claim for damages. (*Id.* ¶¶ 8–9; ECF No. 13-4 at 1-3 (summarizing June 1, 2022 Zoom call presentation).) VMware further provided public links confirming these representations using Zoom's chat feature, and ZT's counsel orally confirmed his receipt of the same. (*See* Lin Decl. ¶¶ 9–10.)

In view of these fundamental defects, VMware asked that ZT's counsel dismiss the case immediately. (*See id.* ¶ 11; ECF No. 13-4 at 1.) Although ZT requested a follow-up Zoom meeting for June 8, 2022, to discuss VMware's positions, ZT's counsel failed to show up. (*See* Lin Decl. ¶¶ 13-14.)

On June 9, 2022, VMware's in-house counsel again wrote ZT to reiterate the baseless nature of ZT's Complaint:

> Given all the easily obtainable public evidence above, we see no reasonable basis for a finding of infringement and don't believe anyone on the ZT IP team conducted a reasonable inquiry to determine that infringement allegations in the complaint would be well grounded in fact. To avoid either side incurring any additional legal costs, we wanted to give you and your client a less formal opportunity to re-consider the complaint, but you do not seem inclined to timely respond despite our efforts, having been 15 minutes late for our first scheduled call and

3

>missing your own requested follow-up call entirely. We now will have to move forward with our defenses and seek all remedies we feel proper in view of the circumstances.

(ECF No. 13-4 at 3.) VMware's in-house counsel again noted the publicly available materials supporting VMware's representations and asked that ZT dismiss its case. (*Id.* at 1-3.) ZT and its counsel did not respond. (Lin Decl. ¶¶ 15-16.)

Having heard nothing, VMware was forced to retain counsel. Via letter dated June 13, 2022, VMware's counsel again explained to ZT how the Complaint and claim chart illustrated ZT's lack of a good-faith basis for bringing this case. (ECF No. 13-2.) VMware's counsel specifically advised ZT that it would pursue recovery of its fees and costs if ZT did not dismiss the lawsuit promptly. (*Id.* at 3.)

ZT and its counsel still did not respond. (Van Nort Decl. ¶ 5.)

On June 21, 2022, VMware served a draft of its Rule 11 motion on ZT.[2] (Van Nort Decl., Ex. 4.) And on July 8, 2022, VMware filed its motion to dismiss—explaining again that ESX 1.5's prior art status meant that the '583 patent was invalid, and that the Service Console's removal means that damages were unavailable. (ECF No. 13 at 1, 4 n.2.)

ZT and its counsel still did not respond. (Van Nort Decl. ¶ 5.)

---

[2] The draft served was substantially identical to this motion and thus satisfies Rule 11(c)(2)'s safe harbor provision. *See Scott v. Wollney*, No. 20-cv-2825, 2021 U.S. Dist. LEXIS 200868, at *8 n.3 (N.D. Tex. Sep. 16, 2021) (Rule 11 safe harbor satisfied by party's filing a "substantially identical copy" of served motion); *Hostingxtreme Ventures, LLC v. Bespoke Grp., LLC*, No. 14-cv-1471, 2017 U.S. Dist. LEXIS 203277, at *7 n.3 (N.D. Tex. Nov. 13, 2017) (same); *Budri v. FirstFleet Inc.*, No. 19-cv-0409, 2019 U.S. Dist. LEXIS 188250, at *13 n.8 (N.D. Tex. Sep. 20, 2019) (same); *Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 12-cv-764, 2015 U.S. Dist. LEXIS 34784, at *11-12 n.2 (E.D. Tex. Mar. 20, 2015) (same).

### D. ZT Finally Dismisses Its Complaint.

On July 13, 2022, VMware requested a meet and confer in advance of filing its Rule 11 motion. (Van Nort Decl., Ex. 5.) ZT's counsel did not respond. (*Id.*) After additional prodding—and after ignoring six weeks' worth of correspondence—ZT finally agreed to meet and confer on July 18, 2022. (*Id.*)

At the July 18, 2022 meet and confer, ZT's counsel alleged ZT was continuing to evaluate VMware's positions, as ZT had filed suit only three months earlier. (*Id.* ¶¶ 7-10.) In response, VMware's counsel explained that parties' counsels are obligated not to file papers lacking a Rule 11 basis and reminded ZT's counsel of the prior *WPEM* decision. (*Id.*) VMware's counsel also explained that ZT had received ample time to review VMware's positions and needed to dismiss its Complaint, at minimum, to avoid sanctions. (*Id.*)

ZT's counsel then launched into an expletive-filled tirade accusing VMware of "threatening" him. (*Id.*) The meet and confer concluded with VMware's counsel indicating that VMware would move forward with its Rule 11 motion, and ZT's counsel indicating its intent to continue considering VMware's positions. (*Id.*)

Despite claiming the need for additional time to review and better understand VMware's positions, ZT dismissed its Complaint with prejudice less than thirty minutes after the call's conclusion. (ECF No. 17.)

To date, VMware has incurred approximately $104,915 in outside counsel fees defending against ZT's frivolous claims. VMware expended approximately $42,400 on its motion to dismiss and $58,100 on this motion and the fees motion. (Van Nort Decl. ¶ 10; *id.* Exs. 6-7; Declaration of Steven Callahan ¶ 5; *id.* Ex. 15.)

### III. LEGAL STANDARD

#### A. Sanctionable Conduct Under Federal Rule of Civil Procedure 11

Rule 11 operates to maintain the integrity of the judicial process and streamline litigation by deterring baseless filings. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). It imposes on parties and their attorneys an affirmative duty to investigate the facts surrounding the case before filing suit. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 545 (1991) (citation omitted). By signing a paper filed in federal court, an attorney certifies that to the best of his or her "knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the [allegations and other] factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3) (emphasis added).

A defendant may invoke Rule 11 to protect against the substantial costs of defending against a suit without a well-grounded factual basis. This policy is suited particularly well for patent infringement suits, where the presence of complicated technical and scientific issues and the need for expensive expert testimony drives the average cost of litigation into the millions. As the Federal Circuit has recognized, "[d]efending against baseless claims of [patent] infringement subjects the alleged infringer to undue costs—*precisely the scenario Rule 11 contemplates*." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014) (emphasis added) (quoting *View Eng'g*, 208 F.3d at 986).

To satisfy Rule 11, a plaintiff's attorney must conduct an infringement analysis before filing a patent-infringement complaint. *See View Eng'g*, 208 F.3d at 986. This analysis requires, at minimum, that the plaintiff "perform an objective evaluation of the claim terms to satisfy its obligation to conduct a reasonable pre-suit evaluation." *Source Vagabond Sys.*, 753 F.3d at 1301 (internal quotation omitted). "The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case

6

under Rule 11." *View Eng'g*, 208 F.3d at 986.

When a plaintiff conducts an inadequate inquiry—or none at all—courts may impose sanctions under Rule 11. *See id.* at 986. A plaintiff's failure to review publicly available materials bearing on the merits of its case supports sanctions. *See WPEM*, 2020 WL 555545, at *3–6, 8 ("[A] reasonable plaintiff conducting even a minimally diligent *infringement* investigation would have at least reviewed the would-be-defendants' website").

## IV. ARGUMENT

### A. The Court Should Sanction ZT's Counsel for Failing to Conduct an Adequate Pre-Filing Investigation.

The Complaint and attached claim chart make clear that ZT lacked a good-faith basis to bring this action and did not conduct an adequate pre-suit investigation as required by Rule 11. Not only did ZT and its counsel fail to conduct a reasonable pre-suit investigation, they continued to pursue their frivolous claims despite notice of their case's defects from VMware.

#### 1. ZT Did Not Adequately Review Public Materials Showing that ESX 1.5 Predates the '583 Patent.

It is hornbook patent law that "that which infringes if later anticipates if earlier." *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) (citation omitted). For that reason, if an accused product predates the allegedly infringed patent, there can be no infringement, and any infringement case on that patent would be meritless. *See Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010) ("There can be no infringement of claims deemed to be invalid.").

Before filing suit, ZT and its counsel did not even check the commercial release date of ESX 1.5. Had they done so, they would have readily discovered public materials referring to ESX 1.5's commercial release on May 13, 2002. (*See, e.g.*, Van Nort Decl., Ex. 8 ("VMware Announces ESX Server 1.5 for Enterprise Server Consolidation," VMWARE NEWS & STORIES

7

(May 13, 2002) (available at https://news.vmware.com/releases/esx15)).)

Had ZT and its counsel reviewed the very materials that they cited in the claim chart appended to the Complaint, they also would have uncovered this fact. One of the cited materials bears a 2002 copyright date. (*See* ECF No. 1, Ex. A (citing "VMware User's Manual ESX Server Version 1.5" at 2 ("© 2002 VMware, Inc.") (available at https://www.vmware.com/pdf/esx_15_manual.pdf.) As ESX 1.5's release predates the '583 patent's filing date by over a year, the patent is invalid under 35 U.S.C. § 102(b).[3] Just as in *View Engineering*, ZT's counsel here plainly did not conduct "a reasonable inquiry for the purpose of filing patent infringement claims." *View Eng'g*, 208 F.3d at 986.

ZT's counsel was chastised two years ago for making the same grievous error. *See WPEM*, 2020 WL 555545 at *3-6, 8 (awarding $179,622 in attorneys' fees). In *WPEM*, ZT's counsel "conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent," even though "the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability [the defendant] now asserts." *Id.* at *3. In particular, ZT's counsel failed to discover publicly available materials showing that the plaintiff's infringement theories rendered the patent invalid, as the accused product predated the patent. *See id.* at *4.

So too here. As in *WPEM*, ZT's counsel failed to adequately review readily available public materials, such as materials from VMware's website and a user manual that ZT itself cited

---

[3] 35 U.S.C. § 102(b) provides that "[a] person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]"). Because the '583 patent was filed before March 16, 2013, the version of Section 102 before the America Invents Act applies. *See Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1084 n.1 (Fed. Cir. 2022); 35 U.S.C. § 100 (note).

in its claim chart. Those materials would have confirmed that ESX 1.5 predates the '583 patent's priority date by over a year, rendering the patent invalid. As in *WPEM,* "[i]t is hard to square this failure with the obligation to conduct a diligent pre-filing investigation." 2020 WL 555545 at *6.

### 2. ZT Did Not Adequately Review Public Materials Showing VMware Removed the Service Console Essential to its Infringement Theory.

ZT and its counsel's failure to discover that the accused product predates the patent-in-suit was not their only failure. ZT and its counsel also failed to realize that VMware removed the service console from the ESX product in 2010, mooting any claim for damages.

The Service Console was essential to establishing ZT's theory of infringement. ZT's claim chart mapped the "operating system" limitation of all claims of the '583 patent to ESX 1.5's service console. (ECF No. 1, Ex. A.) But publicly available materials also show that VMware removed that feature when transitioning to the ESXi platform in 2010. (*See, e.g.*, Van Nort Decl., Ex. 9 ("The Architecture of VMware ESXi"), at 3 ("[T]he Linux-based service console has been removed . . . .").) As 35 U.S.C. § 286 limits a plaintiff's damages recovery to six years before the lawsuit, VMware's removal of the service console 10+ years ago means that ZT could not recover damages, even assuming *arguendo* that its infringement claims had merit and the '583 patent was valid.

ZT and its counsel can offer and have offered no explanation for filing and then originally maintaining this litigation, despite the unavailability of damages. Their failure to investigate whether, in fact, damages are available independently violated Rule 11 and justifies sanctions.

### 3. ZT Ignored the Proof of Non-Infringement and No Damages.

ZT's approach to this case has been to file first and think later, without adequately

9

investigating the merits of its infringement claim. Rule 11 does not permit such an approach. *See Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986) ("Rule 11 *requires* lawyers to think first and file later, on pain of personal liability.") (citation omitted).

ZT's approach is all the more troubling, as VMware undertook to point out these issues to ZT before filing this motion in the hope of avoiding unnecessary legal costs and motion practice. Post-suit, in correspondence, and in a Zoom meeting, VMware repeatedly explained why ZT could not reasonably maintain this litigation in view of the publicly available evidence that the accused ESX 1.5 functionality both predated ZT's patent and was removed long ago. (*See* ECF No. 13-4 at 1-3; ECF No. 13-2; Lin Decl. ¶¶ 7-10.) VMware also provided ZT with the evidence itself. (*See* ECF No. 13-4 at 1-3, Lin Decl. ¶¶ 7-10.)

Rather than respond to VMware's showing, ZT disengaged and missed a call—which it scheduled—to discuss the evidence. ZT then ignored correspondence from VMware's counsel and service of this Rule 11 motion. ZT's maintenance of this action and refusal to dismiss it, after VMware served its Rule 11 motion and then moved to dismiss under Rule 12(b)(6), justify sanctions here. *See Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006) ("[T]he court clearly concluded that [plaintiff's] filing never satisfied Rule 11 to begin with—that is, at the time of filing—*and the fact that he still had no evidentiary support by the time of the hearing only underscores the violation.*") (emphasis added).

    **4.    The Court Should Sanction ZT's Counsel and Award VMware Attorneys' Fees and Costs.**

As the Federal Circuit warned in *View Engineering*, patent cases are expensive, and defending a baseless patent case burdens the defendant with undue costs. *208* F.3d at 986. A court can award sanctions to deter plaintiffs from filing such baseless lawsuits. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter

repetition of the conduct or comparable conduct by others similarly situated."). Sanctions may include a defendant's attorneys' fees and costs. *See* Fed. R. Civ. P. 11(c)(2) ("[T]he court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."); *Skidmore*, 455 F.3d at 568 (awarding all defense costs).

The Court should sanction ZT and its counsel and award VMware's fees and costs here. ZT and its counsel did not conduct an adequate pre-filing investigation. They failed to discover readily available, public materials showing that the accused functionality predates the '583 patent *and* has long since been removed. Even after VMware brought these materials to their attention, ZT and its counsel ignored those materials and instead maintained this lawsuit.

Based on ZT's decisions, VMware was forced to unnecessarily incur fees and costs defending itself, preparing and filing a motion to dismiss under Rule 12(b)(6), and in bringing this motion. And the Court must waste precious resources assessing why ZT filed—and persisted with—an infringement action involving an invalid patent and no recoverable damages. Having been chastised for filing and maintaining a similarly frivolous lawsuit in the past, ZT's counsel knew that all of these things are wrong.

Should the Court agree that ZT and its counsel have violated Rule 11, VMware asks that the Court also determine this case to be "exceptional" under 35 U.S.C. § 285. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005) *overruled on other grounds by Octane*, 572 U.S. at 555 ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . conduct that violates [Rule 11] or like infractions."). That would provide another basis for awarding

11

VMware its attorneys' fees. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").[4]

Note that while ZT finally dismissed its complaint on July 18, 2002, it did so only after more than 21-days from when VMware served ZT with a copy of a Rule 11 motion substantially identical to this motion. By failing to dismiss the Complaint until after the safe harbor period expired, ZT failed to cure its Rule 11 violation in the time allowed under Rule 11. FED. R. CIV. P. 11(c)(2) (Rule 11 motion can be filed unless "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"); *Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1026 (D. Colo. 2009) (noting that by making a filing "outside of the safe harbor period, it did not cure the Rule 11 violations").

V.     **CONCLUSION**

ZT never should have filed this lawsuit, and it can offer no "sound excuse" or identify any "considerable mitigating circumstances" for maintaining it. *View Eng'g, Inc.*, 208 F.3d at 986. As ZT's conduct is of the sort that "should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions," *id.* the Court should find that ZT has violated Rule 11 and sanction ZT and its counsel. The Court also award VMware its fees and costs totaling approximately $104,915 to date.[5]

---

[4] As a Rule 11 motion "must be made separately from any other motion," VMware files its exceptional case motion separately. Fed. R. Civ. P. 11(c)(2).

[5] Should the Court agree that VMware is entitled to its fees and costs, VMware will submit additional information relating to the work by its outside counsel, their hourly rates, and incurred costs.

12

| | |
|---|---|
| August 1, 2022 | s/Richard S.J. Hung<br>Richard S.J. Hung<br>Diek Van Nort<br>Davis P. Clark (*pro hac vice* forthcoming)<br>MORRISON & FOERSTER LLP<br>425 Market Street, Suite 3500<br>San Francisco, California 94105<br>P (415) 268-7000<br>F (415) 268-7522<br>rhung@mofo.com<br>dvannort@mofo.com<br>dclark@mofo.com<br><br>Berkeley Fife (*pro hac vice* forthcoming)<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, California 94304-1018<br>P: (650) 813-5600<br>F: (650) 494-0792<br>bfife@mofo.com<br><br>Caleb Wood<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW Suite 900<br>Washington, DC 20037<br>P: (202) 887-1500<br>F: (202) 887-0763 or (202) 887-0764<br>calebwoods@mofo.com<br><br>STEVEN CALLAHAN<br> Texas State Bar No. 24053122<br>CHARHON CALLAHAN<br>ROBSON & GARZA, PLLC<br>3333 Lee Parkway, Suite 460<br>Dallas, Texas 75219<br>P: (214) 521-6400<br>F: (214) 764-8392<br>scallahan@ccrglaw.com<br><br>*Attorneys for Defendant VMware, Inc.* |

**CERTIFICATE OF SERVICE**

The undersigned counsel for VMware, Inc. hereby certifies that a true and correct copy of a motion substantially identical to the above and foregoing document was served on counsel of record for Plaintiff ZT IP, LLC on June 21, 2022 via personal service. (Van Nort Decl. Ex. 4.) Pursuant to the safe-harbor provision of FED. R. CIV. P. 11(c)(2), VMware filed this Motion more than 21 days after service.

s/Richard S.J. Hung<br>Richard S.J. Hung

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 1, 2022, I filed the foregoing document via the Court's ECF system, which will send notice of the filing to counsel for Plaintiff.

s/Steven Callahan<br>Steven Callahan

**CERTIFICATE OF CONFERENCE**

The undersigned counsel for VMware hereby certifies that attorneys (including Richard Hung, Steven Callahan, and Diek Van Nort) for VMware met and conferred with attorneys from ZT (including William Ramey) on July 18, 2022 before VMware filed this motion. Agreement was not reached. At the end of the meet and confer, VMware stated it would file its motion for Rule 11 sanctions and fees. ZT indicated that it was continuing to consider VMware's position.

s/Richard S.J. Hung<br>Richard S.J. Hung