**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ZT IP, LLC,** | **Case No. 3:22-cv-970-X** |
| **Plaintiff,** | |
| **v.** | |
| **VMWARE, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**DEFENDANT VMWARE, INC.'S**
**MOTION FOR AN EXCEPTIONAL CASE FINDING**
**AND ITS ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 2

      A.    The Parties, ZT and VMware............................................................................ 2

      B.    VMware Releases the Accused Product in 2002. ................................................. 3

      C.    The '583 Patent Is Filed in 2003................................................................... 3

      D.    ZT Files Suit, Relying Extensively on the 2002 ESX 1.5 User Manual................ 4

      E.    VMware Repeatedly Tells ZT that Its Patent Is Invalid and that Damages
            Are Unavailable. ................................................................................... 6

      F.    ZT Finally Dismisses Its Complaint. ................................................................ 7

III.  LEGAL STANDARD............................................................................................ 8

IV.   ARGUMENT ...................................................................................................... 10

      A.    This Case Is Exceptional.................................................................................. 10

            1.    ZT Did Not Adequately Review Public Materials Showing that
                  ESX 1.5 Predates the '583 Patent. .......................................... 10

            2.    ZT Did Not Adequately Review Public Materials Showing
                  VMware Removed the Service Console Essential to its
                  Infringement Theory. ................................................................. 12

            3.    ZT Ignored the Proof of Non-Infringement and No Damages. ............... 13

            4.    ZT's Unreasonable Litigation Conduct Further Supports Finding
                  the Case Exceptional and Awarding Fees.................................... 14

            5.    ZT's Counsel's History of Unreasonable Patent Litigation Also
                  Supports an Exceptional Case Finding and Fee Award Here. ................ 15

            6.    VMware Is the Prevailing Party........................................................... 16

V.    CONCLUSION................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005)..................................................................................9, 10

*Carroll v. Jaques Adm. Law Firm, P.C.*,
   110 F.3d 290 (5th Cir. 1997) ............................................................................................14

*Gigamon Inc. v. Apcon, Inc.*,
   No. 2:19-CV-00300-JRG, 2022 WL 949962 (E.D. Tex. Mar. 29, 2022)...............................10

*Google LLC v. IPA Techs.*,
   34 F.4th 1081 (Fed. Cir. 2022) ........................................................................................11

*Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*,
   No. 3:16-CV-0364-N, 2021 WL 1597903 (N.D. Tex. Mar. 19, 2021)....................................9

*Intellect Wireless, Inc. v. Sharp Corp.*,
   45 F. Supp. 3d 839 (N.D. Ill. 2014) ...................................................................................8

*Kilopass Tech., Inc. v. Sidense Corp.*,
   738 F.3d 1302 (Fed. Cir. 2013)......................................................................................1, 8

*Marrin v. Griffin*,
   599 F.3d 1290 (Fed. Cir. 2010).......................................................................................11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)................................................................................................ *passim*

*Oplus Techs., Ltd. v. Vizio, Inc.*,
   782 F.3d 1371 (Fed. Cir. 2015).......................................................................................14

*Polaroid Corp. v. Eastman Kodak Co.*,
   789 F.2d 1556 (Fed. Cir. 1986).......................................................................................10

*Raniere v. Microsoft Corp.*,
   887 F.3d 1298 (Fed. Cir. 2018).......................................................................................16

*Romag Fasteners, Inc. v. Fossil, Inc*.,
   866 F.3d 1330 (Fed. Cir. 2017).......................................................................................16

*Soar Tools, LLC v. Mesquite Oil Tools, Inc*.,
   No. 5:19-CV-243-H, 2022 U.S. Dist. LEXIS 83887 (N.D. Tex. Feb. 9, 2022) .....................13

*Stewart v. RCA Corp.*,
   790 F.2d 624 (7th Cir. 1986) ..................................................................................13

*Tinnus Enters., LLC v. Telebrands Corp.*,
   369 F. Supp. 3d 704 (E.D. Tex. 2019) ....................................................................10

*Traxcell Techs., LLC. v. AT&T Corp.*,
   No. 2:17-CV-00718-RWS-RSP, 2022 WL 949949 (E.D. Tex. Mar. 29, 2022).............9, 13

*Trover Grp., Inc. v. Dedicated Micros USA*,
   No. 2:13-CV-1047-WCB, 2015 WL 4910875 (E.D. Tex. Aug. 17, 2015)...........................16

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000).............................................................................11, 16

*WPEM, LLC v. SOTI Inc.*,
   No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *aff'd*,
   837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021)......................*passim*

**Statutes**

35 U.S.C. § 100 ..................................................................................................11

35 U.S.C. § 102(b) ..............................................................................................11

35 U.S.C. § 285 .............................................................................................*passim*

35 U.S.C. § 286 ...............................................................................................1, 12

**Other Authorities**

Fed. R. Civ. P. 11 ..........................................................................................*passim*

Fed. R. Civ. P. 41(a)(2) ......................................................................................16

## I.      INTRODUCTION

The Federal Circuit has explained "that the aim of [an award] § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  Here, VMware, Inc. ("VMware") should be compensated for having to defend itself against an unreasonable suit that ZT IP, LLC ("ZT") and its counsel filed and maintained knowing that it was fatally defective in view of two obvious defects.  First, ZT accused certain VMware functionality of infringing U.S. Patent No. 7,647,583 (the "'583 patent").  But the accused ESX functionality predates the '583 patent and thus could not infringe (or would invalidate the patent if it did).  Second, VMware removed the accused ESX functionality over a decade ago.  This means that, even if ZT's infringement theory were plausible (which it is not), ZT could not recover damages under 35 U.S.C. § 286.

ZT and its counsel should have known of both defects pre-suit.  Publicly available materials readily confirm that the accused ESX technology predates the '583 patent.  And publicly available materials readily confirm that VMware removed this technology in 2010.

By filing its Complaint, ZT and its counsel acted unreasonably twice over.  Having been chastised for the same conduct only two years ago, ZT's counsel should have known better.  *See WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3-6, 8 (E.D. Tex. Feb. 4, 2020) (finding case exceptional and awarding $179,622 in attorneys' fees where counsel "conducted *no* pre-filing investigation into the validity and enforceability of the Asserted Patent *at all*"), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021).[1]

---

[1] Judge Gilstrap's award of fees against ZT's counsel in *WPEM* on identical facts and the Federal Circuit's affirmance of that award are attached as Exhibits 1 and 2, respectively, to the Declaration of Diek Van Nort in Support of VMware's Motion for Rule 11 Sanctions ("Van Nort Decl.").

Post-filing, ZT and its counsel undeniably knew of these defects.  Before serving this motion, VMware's in-house counsel met with ZT and provided the public evidence showing that the accused ESX technology predated the '583 patent and had been removed long ago.  Not only did ZT fail to respond to that evidence, ZT skipped a meeting that it scheduled to discuss the evidence.  ZT then ignored correspondence from VMware's outside counsel reiterating— again—the fatal defects with its case and service of VMware's Rule 11 motion.

ZT had no basis for filing this lawsuit and even less of a basis for maintaining it.  ZT dismissed this suit with prejudice only *after* VMware prepared and filed a motion to dismiss, *after* VMware prepared and served a Rule 11 motion, and *after* the twenty-one-day safe harbor under Rule 11 expired.  ZT's conduct was not harmless; its maintenance of this suit forced VMware to incur $105,915 in attorneys' fees preparing and filing its motion to dismiss, preparing and serving its Rule 11 motion, and repeatedly trying to convince ZT of the frivolous nature of this lawsuit.  In view of ZT's failure to conduct an adequate pre-filing investigation and its maintenance of this suit despite VMware's repeated requests to dismiss, VMware asks that the Court find this case to be exceptional under 35 U.S.C. § 285 and award VMware its attorneys' fees and costs.[2]

## II.   STATEMENT OF FACTS

### A.   The Parties, ZT and VMware

ZT is a limited liability company formed in Austin, Texas on February 28, 2022, three months before filing the Complaint in this action.  (Van Nort Decl., Ex. 3.)  VMware is a market-

---

[2] VMware files its Rule 11 motion separately from this motion, although both motions rely on the same set of facts.  *See* Fed. R. Civ. P. 11 (c)(2) ("A motion for sanctions must be made separately from any other motion. . . .").  For convenience, all citations to declarations in this motion are to the declarations submitted with VMware's Rule 11 motion.

leading cloud computing and virtualization technology company based in Palo Alto, California. (Declaration of Daniel Lin ("Lin Decl.") ¶ 2.)

### B.      VMware Releases the Accused Product in 2002.

VMware commercially released the accused product, ESX version 1.5 ("ESX 1.5"), on May 13, 2002.  (Van Nort Decl. Ex. 8 at 1-2.)  Upon its release, VMware made available a user manual describing its features and functionality.  (ECF No. 13-3 ("2002 ESX 1.5 User Manual").)  That manual, which bears a 2002 copyright date, confirms ESX 1.5's public availability in 2002.



(*Id.* at 2; *see also id.* at 13 ("Thank you for choosing VMware™ ESX Server™, the virtual machine software for consolidating and partitioning servers in high-performance environments.").)

At its launch, ESX 1.5 included a "Service Console" functionality. That functionality was discontinued from its hypervisor product in 2010.  (Van Nort Decl., Ex. 8 at 2, Ex. 10; Lin Decl. ¶¶ 8-9.).)  VMware discontinued the ESX platform in 2012 in favor of its "ESXi" platform. (Van Nort Decl., Ex. 11.)

### C.      The '583 Patent Is Filed in 2003.

The application for the asserted patent was filed on May 20, 2003:

| (12) **United States Patent** Zeidman et al. | (10) **Patent No.:** US 7,647,583 B2 (45) **Date of Patent:** Jan. 12, 2010 |
|---|---|

(54) **METHOD AND APPARATUS FOR EMULATING A HARDWARE/SOFTWARE SYSTEM USING A COMPUTER**

(76) Inventors: **Robert M Zeidman**, 7599 Squirewood Way, Cupertino, CA (US) 95014-5014; **Daniel R Hafeman**, 198 Donner Ct., Sunnyvale, CA (US) 94086

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 790 days.

(21) Appl. No.: **10/249,938**

(22) Filed: **May 20, 2003**

6,658,633 B2 * 12/2003 Devins et al. .................. 716/5
6,971,046 B1 * 11/2005 Johnson et al. .............. 714/35
2004/0205755 A1 * 10/2004 Lescouet et al. ........... 718/100

OTHER PUBLICATIONS

"Analysis of hardware and software approaches to embedded in-circuit emulation of microprocessors", Chen et al., Jan. 2002, pp. 127-133. Online retrieved at <http://delivery.acm.org/10.1145/570000/563948/p127-chen.pdf>.*
"The A to Z of SoCs", Bergamaschi et al., Nov. 2002, pp. 790-798. Online retrieved at <http://delivery.acm.org/10.1145/780000/774689/p791-bergamaschi.pdf>.*
"A bypass scheme for core-based system fault testing", Nourani et al., Feb. 1998, pp. 979-980. Online retrieved at <http://delivery.acm.org/10.1145/370000/368562/p979-nourani.pdf>.*

* cited by examiner

(ECF No. 1-2 at Cover.)  That filing date is more than a year *after* ESX 1.5's release.

### D.     ZT Files Suit, Relying Extensively on the 2002 ESX 1.5 User Manual.

On May 2, 2022, ZT sued VMware, alleging that ESX 1.5 infringes the '583 patent. (ECF No. 1 ¶ 9.)  ZT appended a claim chart to the Complaint to illustrate ESX 1.5's alleged infringement.  (ECF No. 1-1, Ex. A.)  The chart cites extensively—and solely—to the 2002 ESX 1.5 User Manual to show VMware's alleged infringement:

4



(*Id.* at 1.)  The chart specifically accuses ESX 1.5's "Service Console" of infringement, referring to it seventeen times:



(*Id.* at 9.)  Neither the Complaint nor the claim chart refers to any product besides ESX 1.5 or to any documentation besides the 2002 ESX 1.5 User Manual.

> **E.     VMware Repeatedly Tells ZT that Its Patent Is Invalid and that Damages Are Unavailable.**

After ZT filed suit, VMware repeatedly advised ZT of the deficiencies in its Complaint. During a June 1, 2022 Zoom call, VMware's in-house counsel presented documents showing that ESX 1.5 was commercially released over a year before the '583 patent's priority date.  (Lin Decl. ¶¶ 5–9.)  VMware's in-house counsel explained that the '583 patent therefore is invalid. (*See id.* ¶¶ 7–8.)  VMware's in-house counsel further explained that VMware had removed the ESX 1.5 Service Console (an essential part to ZT's infringement theory) in 2010, precluding any claim for damages.  (*Id.* ¶¶ 8–9; ECF No. 13-4 at 1-3 (summarizing June 1, 2022 Zoom call presentation.)  VMware further provided public links confirming these representations using Zoom's chat feature, and ZT's counsel orally confirmed his receipt of the same.  (*See* Lin Decl. ¶¶ 9–10.)

In view of these fundamental defects, VMware asked that ZT's counsel dismiss the case immediately.  (*See id.* ¶ 11; ECF No. 13-4 at 1.)  Although ZT requested a follow-up Zoom meeting for June 8, 2022, to discuss VMware's positions, ZT's counsel failed to show up.  (*See* Lin Decl. ¶¶ 13-14.)

On June 9, 2022, VMware's in-house counsel again wrote ZT to reiterate the baseless nature of ZT's Complaint:

> Given all the easily obtainable public evidence above, we see no reasonable basis for a finding of infringement and don't believe anyone on the ZT IP team conducted a reasonable inquiry to determine that infringement allegations in the complaint would be well grounded in fact. To avoid either side incurring any additional legal costs, we wanted to give you and your client a less formal opportunity to re-consider the complaint, but you do not seem inclined to timely respond despite our efforts, having been 15 minutes late for our first scheduled call and

6

missing your own requested follow-up call entirely.  We now will have to move forward with our defenses and seek all remedies we feel proper in view of the circumstances.

(ECF No. 13-4 at 3.)  VMware's in-house counsel again noted the publicly available materials supporting VMware's representations and asked that ZT dismiss its case.  (*Id.* at 1-3.)  ZT and its counsel did not respond.  (Lin Decl. ¶¶ 15-16.)

Having heard nothing, VMware was forced to retain counsel.  Via letter dated June 13, 2022, VMware's counsel again explained to ZT how the Complaint and claim chart illustrated ZT's lack of a good-faith basis for bringing this case.   (ECF No. 13-2.)  VMware specifically advised ZT that it would pursue recovery of its fees and costs if ZT did not dismiss the lawsuit promptly.  (*Id.* at 3.)  ZT and its counsel still did not respond.  (Van Nort Decl. ¶ 6.)

On June 21, 2022, VMware served a draft of its Rule 11 motion on ZT.   (Van Nort Decl., Ex. 4.)  And on July 8, 2022, VMware filed its motion to dismiss—explaining again that ESX 1.5's prior art status meant that the '583 patent was invalid, and that the Service Console's removal meant that damages were unavailable.  (ECF No. 13 at 1, 4 n.2.)  ZT and its counsel still did not respond.  (Van Nort Decl. ¶ 5.)

## F.      ZT Finally Dismisses Its Complaint.

On July 13, 2022, VMware requested a meet and confer in advance of filing its Rule 11 motion.  (Van Nort Decl., Ex. 5.)  ZT's counsel initially did not respond.  (*Id.*)  After additional prodding on July 15, 2022—and after ignoring six weeks' worth of correspondence—ZT finally agreed to meet and confer on July 18, 2022.  (*Id.*)

At the July 18, 2022 meet and confer, ZT's counsel alleged ZT was continuing to evaluate VMware's positions, as ZT had filed suit only three months earlier.  (*Id.* ¶¶ 7-9.)  In response, VMware's counsel explained that both parties' counsel were obligated not to file papers lacking a Rule 11 basis and reminded ZT's counsel of the prior *WPEM* decision.  (*Id.*)

7

VMware's counsel also explained that ZT had received ample time to review VMware's positions and needed to dismiss its Complaint, at minimum, to avoid sanctions.  (*Id.*)

ZT's counsel then launched into an expletive-filled tirade accusing VMware of "threatening" him.  (*Id.*)  The meet and confer concluded with VMware's counsel indicating that VMware would move forward with its Rule 11 motion, and ZT's counsel indicating its intent to continue considering VMware's positions.  (*Id.*)

Despite claiming the need for additional time to review and better understand VMware's positions, ZT dismissed its Complaint with prejudice less than thirty minutes after the call's conclusion. (ECF No. 17.)

To date, VMware has incurred approximately $104,915 in outside counsel fees defending against ZT's frivolous claims.  VMware expended approximately $42,400 on its motion to dismiss and $58,100 on this motion and the Rule 11 motion.  (Van Nort Decl. ¶ 10; *id.* Exs. 6-7; Declaration of Steven Callahan ¶ 5; *id.* Ex. 15.)

### III.    LEGAL STANDARD

Under 35 US.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "The purpose of Section 285 is not to punish the losing party, but rather, to compensate the prevailing party for the costs incurred due to the losing party's 'unreasonable conduct.'" *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014)); *accord Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur.").

"[A]n 'exceptional' case is simply one that stands out from others with respect to substantive strength of a party's litigating position (considering both the governing law and the

facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,* ,
572 U.S. at 554.  The standard of proof is a preponderance of the evidence.  *Id.* at 557-58.

"[D]istrict courts [can] consider a nonexclusive list of factors, including frivolousness,
motivation, objective unreasonableness (both in the factual and legal components of the case)
and the need in particular circumstances to advance considerations of compensation and
deterrence."  *Id.* at 554 n.6 (citation and quotation marks omitted).  A Rule 11 violation is
sufficient for an exceptional case finding and attorneys' fee award under Section 285.  *See*
*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005),
*overruled on other grounds by Octane*, 572 U.S. at 555 ("A case may be deemed exceptional
when there has been some material inappropriate conduct related to the matter in litigation, such
as . . . conduct that violates [Rule] 11, or like infractions.").

A Rule 11 violation, however, is not a prerequisite to an exceptional case finding and an
attorneys' fee award; lesser conduct may suffice.  *Octane*, 572 U.S. at 555 ("[S]anctionable
conduct is not the appropriate benchmark. . . .  [A] district court may award fees in the rare case
in which a party's unreasonable conduct—while not necessarily independently sanctionable—is
nonetheless so 'exceptional' as to justify an award of fees.").  A case may be exceptional because
a party's litigation position was weak or its approach to litigation was unreasonable.  *See id.* at
555; *Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*, No. 3:16-CV-0364-N, 2021 WL 1597903, at *2
(N.D. Tex. Mar. 19, 2021) (case deemed exceptional where "litigating position was substantively
weak considering the governing law and facts of the case"); *Traxcell Techs., LLC. v. AT&T*
*Corp.*, No. 2:17-CV-00718-RWS-RSP, 2022 WL 949949, at *5 (E.D. Tex. Mar. 29, 2022) (case
found exceptional based on unreasonable claim construction positions, infringement theories,
and assertion of invalid claims).

Neither bad faith nor litigation misconduct is required for an exceptional case finding. *See Gigamon Inc. v. Apcon, Inc.,* No. 2:19-CV-00300-JRG, 2022 WL 949962, at *1 (E.D. Tex. Mar. 29, 2022) ("Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, *e.g.*, because it involves bad faith or some other misconduct."); *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 744 (E.D. Tex. 2019) ("To be considered exceptional, conduct need not be 'independently sanctionable.' Nor is a finding of bad faith required.") (internal citations omitted).

## IV.  ARGUMENT

### A.  This Case Is Exceptional.

VMware asks that the Court determine that this case is "exceptional" under 35 U.S.C. § 285. *See Brooks*, 393 F.3d at 1381; *Octane*, 572 U.S. at 554 ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.").

The Complaint and attached claim chart make clear that ZT lacked a good-faith basis to bring this action and did not conduct an adequate pre-suit investigation. Not only did ZT and its counsel fail to conduct a reasonable pre-suit investigation, but they continued to pursue their frivolous claims despite notice of their case's defects from VMware. ZT's litigation positions were meritless, and ZT litigated this case in an unreasonable manner.

### 1.  ZT Did Not Adequately Review Public Materials Showing that ESX 1.5 Predates the '583 Patent.

It is hornbook patent law that "that which infringes if later anticipates if earlier." *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986). For that reason, if an accused product predates the allegedly infringed patent, there can be no infringement, and any

infringement case on that patent would be meritless.  *See Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010) ("There can be no infringement of claims deemed to be invalid.").

Before filing suit, ZT and its counsel did not even check the commercial release date of ESX 1.5.  Had they done so, they would have readily discovered public materials referring to ESX 1.5's commercial release on May 13, 2002.  (*See, e.g.*, Van Nort Decl., Ex. 8.)  Had ZT and its counsel reviewed the very materials that they cited in the claim chart appended to the Complaint, they also would have uncovered this fact.  One of the cited materials bears a 2002 copyright date.  (*See* ECF No. 1-1, Ex. A (citing ECF No. 13-3 ("VMware User's Manual ESX Server Version 1.5") at 2 ("© 2002 VMware, Inc.") available at https://www.vmware.com/pdf/esx_15_manual.pdf).)  As ESX 1.5's release predates the '583 patent's filing date by over a year, the patent is invalid under 35 U.S.C. § 102(b).[3]  Just as in *View Engineering*, ZT's counsel here plainly did not conduct "a reasonable inquiry for the purpose of filing patent infringement claims."  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

ZT's counsel was chastised two years ago for making the same grievous error.  *See WPEM*, 2020 WL 555545 at *3-6, 8 (awarding $179,622 in attorneys' fees).  In *WPEM*, ZT's counsel "conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent," even though "the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability [the defendant] now asserts."  *Id.* at *3.  In particular,

---

[3] Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]").  Because the '583 patent was filed before March 16, 2013, the version of Section 102 before the America Invents Act applies.  *See Google LLC v. IPA Techs.*, 34 F.4th 1081, 1084 n.1 (Fed. Cir. 2022); 35 U.S.C. § 100 (note).

ZT's counsel failed to discover publicly available materials showing that the plaintiff's infringement theories rendered the patent invalid, as the accused product predated the patent. *See WPEM*, 2020 WL 555545 at *4.

So too here.  As in *WPEM*, ZT's counsel failed to adequately review readily available public materials, such as materials from VMware's website and a user manual that ZT itself cited in its claim chart.  Those materials would have confirmed that ESX 1.5 predates the '583 patent's priority date by over a year, rendering the patent invalid.  As in *WPEM,* "[i]t is hard to square this failure with the obligation to conduct a diligent pre-filing investigation."  *Id.* at *6.

### 2.   ZT Did Not Adequately Review Public Materials Showing VMware Removed the Service Console Essential to its Infringement Theory.

ZT and its counsel's failure to discover that the accused product predates the patent-in-suit was not their only failure.  ZT and its counsel also failed to realize that VMware removed the Service Console from the ESX product in 2010, mooting any claim for damages.

The Service Console was essential to establishing ZT's theory of infringement.  ZT's claim chart mapped the "operating system" limitation of all claims of the '583 patent to ESX 1.5's service console.  (ECF No. 1-1, Ex. A.)  But publicly available materials also show that VMware removed that feature when transitioning to the ESXi platform in 2010.  (*See, e.g.*, Van Nort Decl., Ex. 9 ("The Architecture of VMware ESXi") at 3 ("[T]he Linux-based *service console* has been removed . . . .") (emphasis added).)   As 35 U.S.C. § 286 limits a plaintiff's damages recovery to six years before the lawsuit, VMware's removal of the service console 10+ years ago means that ZT could not recover damages, , even assuming *arguendo* that its infringement claims had merit and the '583 patent was valid.

ZT and its counsel can offer and have offered no explanation for filing and then originally maintaining this litigation, despite the unavailability of damages.  Their failure to

12

investigate whether, in fact, damages are available independently shows this case is exceptional.

### 3.    ZT Ignored the Proof of Non-Infringement and No Damages.

ZT's approach to this case has been to file first and think later, without adequately investigating the merits of its infringement claim.  The law does not permit such an approach. *Cf. Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986) ("Rule 11 *requires* lawyers to think first and file later, on pain of personal liability.") (citation omitted).

ZT's approach is all the more troubling, as VMware undertook to point out these issues to ZT before filing this motion in the hope of avoiding unnecessary legal costs and motion practice. Post-suit, in correspondence, and in a Zoom meeting, VMware repeatedly explained why ZT could not reasonably maintain this litigation in view of the publicly available evidence that the accused ESX 1.5 functionality both predated ZT's patent and was removed long ago.  (*See* ECF No. 13-4 at 1-3; ECF No. 13-2; Lin. Decl. ¶¶ 7-10.)  VMware also provided ZT with the evidence itself.  (*See* ECF No. 13-4 at 1-3, Lin. Decl. ¶¶ 7-10.)

Rather than respond to VMware's showing, ZT disengaged and missed a call—which it scheduled—to discuss the evidence.  ZT then ignored correspondence from VMware's counsel. Although ZT ultimately dismissed its lawsuit with prejudice, ZT's pursuit of its frivolous claims forced VMware "to file an unnecessary motion to dismiss and serve [plaintiff] with a draft Rule 11 motion for sanctions."  *Soar Tools, LLC v. Mesquite Oil Tools, Inc*., No. 5:19-CV-243-H, 2022 U.S. Dist. LEXIS 83887, at *28-29 (N.D. Tex. Feb. 9, 2022) (finding case exceptional and awarding fees where plaintiff refused to dismiss case despite defendant's repeated requests). ZT's clearly meritless claims and its refusal to drop them support an exceptional case finding and attorneys' fee award.  *See Octane*, 572 U.S. at 555 (explaining that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award" under Section 285); *Traxcell*, 2022 WL 949949, at *5

(assertion of invalid claims supported exceptional case finding).

### 4.   ZT's Unreasonable Litigation Conduct Further Supports Finding the Case Exceptional and Awarding Fees.

Even if one ignores ZT's stubborn pursuit of its meritless claims, its (and its counsel's) conduct and apparent motivation in bringing this case support awarding fees and costs. *See Octane*, 572 U.S. at 554 ("unreasonable manner in which [a] case [i]s litigated" conduct may justify fee award); *id.* at 554 n.6 ("motivation" relevant to fee award determination).

As noted, throughout this action, ZT continuously refused to engage and participate in its own litigation. After VMware explained why the '583 patent was invalid and damages were unavailable via a Zoom call on June 1, 2022, ZT's counsel skipped the follow-up meeting. ZT then ignored VMware's follow-up letters (on June 9 and 13, 2022), VMware's motion to dismiss (on June 21, 2022), and VMware's draft Rule 11 motion (on July 8, 2022).

In the lone instance in which ZT's counsel did engage with VMware's outside counsel, ZT's counsel was openly hostile. During the July 18, 2022 meet and confer, VMware's counsel noted VMware's pending motion to dismiss, its intent to move for sanctions, and the similarities with the prior *WPEM* case. (Van Nort Decl. ¶¶ 7-9.) In response, ZT's counsel cursed at VMware's counsel and accused VMware of threatening him. (*Id.*)

Courts have cited similar misconduct and unprofessional behavior as justifying awarding sanctions, fees, and costs. *Cf. Carroll v. Jaques Adm. Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997) (upholding sanctions for attorney who used profanity and was insulting during deposition); *see also Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1373 (Fed. Cir. 2015) (vacating denial of fee award under Section 285 where counsel's behavior was "inappropriate, unprofessional, and vexatious").

14

**5.    ZT's Counsel's History of Unreasonable Patent Litigation Also Supports an Exceptional Case Finding and Fee Award Here.**

ZT's counsel is a prolific patent filer.  Per his website, in the first four months of 2021 alone, ZT's counsel filed 79 new patent cases and was "poised to be a top 5 patentee law firm in 2021."  (Van Nort Decl., Ex 12; *see also id.* Ex. 13 ("For 2022, a goal for Bill and his Firm is to be in the top ten law firms filing new patent cases across the United States.").)  Since 2021, ZT's counsel has filed ***over 300*** patent cases in Texas federal district courts.  (Van Nort Decl., Ex. 14 (253 cases in the Western District, 25 cases in the Eastern District, 23 cases in the Northern District, and 9 cases in the Southern District).)

Unfortunately, such a large volume of filings substantially increases the likeliood the risk that one will not pay careful attention to each case on one's docket—or that one will have filed a case that one should never have filed at all.  Both occurred here.

As noted above, the Eastern District of Texas previously awarded $179,000 in fees against ZT's counsel's client for filing and maintaining a lawsuit on an invalid patent.  *WPEM,* 2020 WL 555545, at *3-6, 8.  In *WPEM,* as here, ZT's counsel failed to conduct an adequate pre-filing investigation.  *Id.* at *7.  In *WPEM,* as here, ZT's counsel filed a lawsuit alleging that the prior art infringed a patent—a legal impossibility.  *Id.* at *4-5.  In *WPEM,* as here, ZT's counsel was advised of the issues with this case repeatedly.  *Id.* at *1.  And in *WPEM,* as here, ZT's counsel dismissed its claims with prejudice to try to avoid an exceptional case finding.  *Id.* at *2.

ZT's counsel's lack of care and his motivation in filing and persisting with this lawsuit warrant an exceptional case finding and fee award here.  *Octane*, 572 U.S. at 554 n.6 (factors supporting an exceptional case finding include "frivolousness, motivation, [and] objective unreasonableness (both in the factual and legal components of the case)."  So, too, does "the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*

15

Despite the exceptional case finding and fee award against his client just two years ago in *WPEM,* ZT's counsel has made the same careless and preventable error yet again. "[T]hat this misconduct has already been sanctioned should be weighed more heavily, rather than be excluded, in the 35 U.S.C. § 285 analysis." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017).

### 6.   VMware Is the Prevailing Party.

VMware undisputedly is a "prevailing party" under Section 285, as ZT dismissed this case with prejudice (ECF No. 17, 18). *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1301 (Fed. Cir. 2018) ("[D]ismissal with prejudice alters the relationship between the parties and is sufficient to confer prevailing party status for purposes of considering a claim for fees under section 285.") (internal quotations omitted); *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 4910875, at *1 (E.D. Tex. Aug. 17, 2015) ("When a party seeks dismissal of an action under Rule 41(a)(2) unilaterally, rather than as part of a settlement, the opposing party is ordinary regarded as the prevailing party.").

### V.   CONCLUSION

ZT never should have filed this lawsuit, and it can offer no "sound excuse" or identify any "considerable mitigating circumstances" for maintaining it. *View Eng'g, Inc.*, 208 F.3d at 986. VMware asks that the Court find this case to be exceptional and award VMware its fees and costs totaling approximately $104,915 to date.[4]

---

[4] Should the Court agree that VMware is entitled to its fees and costs, VMware will submit additional information relating to the work by its outside counsel, their hourly rates, and incurred costs.

16

August 1, 2022

s/Richard S.J. Hung
Richard S.J. Hung
Diek Van Nort
Davis P. Clark (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
425 Market Street, Suite 3500
San Francisco, California 94105
P (415) 268-7000
F (415) 268-7522
rhung@mofo.com
dvannort@mofo.com
dclark@mofo.com

Berkeley Fife (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
P: (650) 813-5600
F: (650) 494-0792
bfife@mofo.com

Caleb Wood
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
P: (202) 887-1500
F: (202) 887-0763 or (202) 887-0764
calebwoods@mofo.com

STEVEN CALLAHAN
  Texas State Bar No. 24053122
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
P: (214) 521-6400
F: (214) 764-8392
scallahan@ccrglaw.com

*Attorneys for Defendant VMware, Inc.*

## **CERTIFICATE OF CONFERENCE**

The undersigned counsel for VMware hereby certifies that attorneys (including Richard Hung, Steven Callahan, and Diek Van Nort) for VMware met and conferred with attorneys from ZT (including William Ramey) on July 18, 2022 before VMware filed this motion.  Agreement was not reached.  At the end of the meet and confer, VMware stated it would file its motion for Rule 11 sanctions and fees.  ZT indicated that it was continuing to consider VMware's position.

s/Richard S.J. Hung
Richard S.J. Hung

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 1, 2022, I filed the foregoing document via the Court's ECF system, which will send notice of the filing to counsel for Plaintiff.

s/Steven Callahan
Steven Callahan