IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZT IP, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>VMWARE, INC.,<br><br>    Defendant. | Case No. 3:22-cv-970-X<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT VMWARE, INC.'S**
**REPLY IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | ZT DOES NOT DISPUTE THAT ITS PRE-FILING INVESTIGATION FAILED TO UNCOVER KEY, PUBLICLY-AVAILABLE FACTS | 2 |
| III. | ZT'S INFRINGEMENT CHART WAS NOT ENOUGH | 3 |
| IV. | ZT HAD NO BASIS FOR ASSUMING THAT ESX 1.5 POST-DATED ITS PATENT, AND ZT DID NOT INVESTIGATE THIS | 4 |
| V. | ZT HAD NO BASIS FOR ASSUMING THAT DAMAGES WERE AVAILABLE, AND ZT DID NOT INVESTIGATE THIS | 5 |
| VI. | ZT'S POST-FILING DILIGENCE IS IRRELEVANT | 6 |
| VII. | CONCLUSION | 7 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antonious v. Spalding & Evenflo Co.*,
    275 F.3d 1066 (Fed. Cir. 2002) .................................................................................3

*Stewart v. RCA Corp.*,
    790 F.2d 624 (7th Cir. 1986) .....................................................................................6

*Thomas v. Cap. Sec. Servs., Inc.*,
    836 F.2d 866 (5th Cir. 1988) (*en banc*) ................................................................2, 6

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ...................................................................................5

*WPEM, LLC v. SOTI Inc.*,
    No. 18-cv-156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *aff'd*, 837 F.
    App'x 773 (Fed. Cir. 2020) .........................................................................1, 3, 4, 5

**Statutes**

35 U.S.C. § 286 ................................................................................................................1, 6

I.      INTRODUCTION

Instead of acknowledging and taking responsibility for filing a meritless lawsuit, ZT makes excuses to avoid sanctions.  But whether to award sanctions Rule 11 is not a close call.

ZT's counsel previously was admonished for the same misconduct in *WPEM, LLC v. SOTI Inc*.  No. 18-cv-156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020).  There, Judge Gilstrap awarded fees based on ZT's counsel's having "conducted *no* pre-filing investigation into the validity and enforceability of the Asserted Patent at all."  *Id.* at *3–7 (emphasis in original).

ZT's opposition confirms that Rule 11 sanctions are proper here.  It does not dispute that:

- **ESX was first.**  Publicly available information shows that VMware released the accused product (ESX 1.5) over one year before ZT filed the asserted patent, making ESX 1.5 invalidating prior art;

- **VMware removed the accused feature long ago.**  Publicly available information also shows that VMware removed the specifically accused feature from ESX 1.5 over ten years ago, precluding damages;

- **ZT's pre-suit investigation was inadequate.**  Despite the public availability of this information, ZT failed to discover it before filing its Complaint; and

- **ZT did not dismiss this lawsuit within the safe harbor period.**  ZT persisted with this lawsuit even after VMware provided the relevant information, moved to dismiss, and served a Rule 11 motion.  ZT dismissed this lawsuit only after VMware filed its Rule 11 motion and the twenty-one day safe harbor expired.

To try to evade sanctions, ZT alleges that it believed its invention predated ESX 1.5.  But ZT does not explain why that belief was reasonable, and ZT undisputedly did nothing to corroborate that belief.  Nor does ZT explain why it believed that the accused feature remained available after 2016, as to permit the recovery of damages under 35 U.S.C. § 286.

ZT also repeatedly points to additional "diligence" that it performed ***after*** filing its Complaint.  But Rule 11 does not condone a "shoot first and ask questions later" approach.

1

Under established Fifth Circuit law, ZT and its counsel were obligated to investigate ZT's infringement theory ***before*** filing suit; their alleged post-filing diligence is irrelevant to the Rule 11 analysis. If ZT's post-suit conduct were relevant, however, ZT's rejection of its original infringement theory would simply underscore its and its counsel's Rule 11 violation here.

ZT's counsel clearly has not learned its lesson, and ZT's pursuit of this meritless lawsuit has forced VMware to incur significant legal expenses. Having been admonished for the same mistake previously, ZT's counsel should have known better. An award of sanctions here would advance Rule 11's twin goals of "deter[ring] frivolous lawsuits" and compensating parties forced to "pay the expensive legal fees associated with defending such lawsuits." *See Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988) (*en banc*). VMware urges the Court to issue Rule 11 sanctions.

## II.    ZT DOES NOT DISPUTE THAT ITS PRE-FILING INVESTIGATION FAILED TO UNCOVER KEY, PUBLICLY-AVAILABLE FACTS

The Complaint makes ZT's failures clear. By accusing a product that predated the asserted patent, and by accusing a feature removed before the potential damages period began—all of which was readily ascertainable via publicly-available sources—ZT failed to conduct an adequate pre-filing investigation. (ECF No. 25 at 7-9.) ZT does not dispute that these fatal errors exist, but expressly concedes that the infringement theory underlying its Complaint was frivolous. (ECF No. 36 at 8 (admitting that "ESX 1.5 does not in fact disclose every feature of claim 1 . . . .").)

ZT also does not dispute that these errors arose because it lacked the requisite knowledge to support its infringement theory when it filed its Complaint. The only pre-suit investigation ZT claims to have done was to "prepar[e] a claim chart" comparing an asserted claim to VMware's ESX 1.5 product and "then hav[e] a ZT attorney review th[is] claim chart." (*Id.* at 9.) ZT

2

explains that, "[a]t the time of filing its Complaint, the information that ZT had discovered" was limited to its belief that "the accused ESX 1.5 functionality infringed the '583 patent." (*Id.* at 6.)

Critically, ZT does ***not*** contend that it truly conducted the required pre-suit investigation into other facts essential to a successful infringement theory pre-suit, such as whether the asserted patent predates the accused product or whether the accused features even existed during the relevant damages period. ZT openly admits that it lacked this information at that time. (*See, e.g., id.* ("At the time of filing the Complaint, ZT did not have information that the publication date of ESX 1.5 was more than one year from the priority date of the '583 patent."); *id.* at 6 n.28, 7, 9, 10 (repeatedly describing information VMware provided as "new").) And ZT does not dispute that the *WPEM* decision (involving ZT's counsel) also involved the failure to assess whether the accused product was, in fact, prior art. *See WPEM, LLC*, 2020 WL 555545, at *6–7.

### III. ZT'S INFRINGEMENT CHART WAS NOT ENOUGH

ZT suggests that "using experts to prepare a claim chart showing how each claim element was infringed" alone constitutes an adequate pre-suit investigation (ECF No. 36 at 7).[1] Not so.

ZT concedes that "ZT IP LLC prepared the claim chart." (Gorrichategui Decl. (ECF No. 36-3) ¶ 2.) It further concedes that ZT's counsel only "reviewed the claim chart supplied by the client," without conducting any independent investigation. (Ramey Decl. (ECF No. 36-2) ¶ 3.) This is insufficient; Rule 11 demands more. "Although the attorney may consult with the client, Rule 11 *requires* that the attorney not rely solely on the client's claim interpretation, but instead perform an independent claim analysis." *Antonious v. Spalding & Evenflo Co.*, 275 F.3d 1066,

---

[1] ZT repeatedly implies that the alleged "complexity" of the asserted patent and the accused product excuses its limited investigation. (ECF No. 36 at 3, 7, 8, 9.) But ZT cites no precedent—and VMware is unaware of any—lessening a patentee's obligation to conduct an adequate pre-filing investigation when the technology is complex. Regardless, the obvious and overlooked issues here—the accused product's release before the alleged invention date, and the accused feature's removal over six years before this lawsuit—are not complex.

1072 (Fed. Cir. 2002) (emphasis added).

The *WPEM* case, too, confirms that a patentee in ZT's shoes must do more. When awarding fees against ZT's counsel's client, Judge Gilstrap explained that a patentee cannot overlook "obvious" and "glaring obstacles to the validity and enforceability of the [a]sserted [p]atent," even if it has "conducted an adequate *infringement* investigation." 2020 WL 555545, at *4 (emphasis in original). Yet ZT and its counsel overlooked not one, but two obvious and glaring issues here.

This case confirms why a patentee must assess such obvious and glaring issues. Even assuming *arguendo* that an infringement chart showed striking similarities between the accused product and the asserted claims, the patentee's infringement case still might fail due to factors distinct from those alleged similarities. That is what happened here: ESX 1.5's prior art status and VMware's removal of the accused feature in 2010 meant that ZT's patent was invalid and damages were unavailable. But ZT and its counsel identified and pursued neither of these issues.

### IV. ZT HAD NO BASIS FOR ASSUMING THAT ESX 1.5 POST-DATED ITS PATENT, AND ZT DID NOT INVESTIGATE THIS

ZT admits that it knew the ESX 1.5 manual in its claim chart was dated 2002 (*i.e.*, before ZT filed its patent application). (ECF No. 36 at 1–2 n.4.) To justify its decision to accuse ESX 1.5 anyway, ZT alleges that its inventors conceived of the invention in November 2002 and thus "could have sworn behind" the ESX 1.5 manual.[2] (*Id.*) This does not show a reasonable pre-filing investigation. In fact, it shows the opposite: ZT *knew* that ESX 1.5 could be prior art and did nothing more to investigate that issue.

ZT offers no explanation for why it **assumed** that ESX 1.5 must have been released after

---

[2] ZT's counsel offered this same justification, unsuccessfully, in *WPEM*. *See* 2020 WL 555545, at *4 ("This appears to be an argument that WPEM would have attempted to 'swear behind' the Accused Technology as prior art . . . .").

4

November 2002. If anything, the close proximity between November 2002 and the end of 2002 should have prompted ZT to investigate ESX 1.5's release date. The very first result from a Google search on "ESX 1.5 release date" is a website identifying that date as May 13, 2002. *See* Ex. A (https://www.virten.net/vmware/esx-release-and-build-number-history/). ZT admits that it cannot "swear behind" that date. (*See* ECF No. 36 at 6 n.28 (conceding that, if ESX 1.5 had been "publicly available on May 13, 2002, . . . ZT would not [be] able to swear behind [it]").)

None of ZT's declarants refer to anything that they did, pre-suit, to determine whether ESX 1.5 predated ZT's patent. (Ramey Decl. ¶¶ 2-3 (referring only to infringement chart and not validity analysis); Gorrichategui Decl. ¶¶ 2-3 (same); Ghorbanpoor Decl. (ECF No. 36-5) ¶ 2 (same).) Although Dr. Gorrichategui alleges that he "could not determine an actual publication date" for the 2002 ESX 1.5 manual, (Gorrichategui Decl. ¶ 2), he does not dispute that it would have taken minutes, if not seconds, to confirm that ESX 1.5 was released in May 2002.

Pre-suit, ZT's counsel apparently relied entirely on ZT's analysis and conducted none himself. (Ramey Decl. ¶ 3 ("[M]y [f]irm reviewed the claim chart supplied by the client . . . ."); *id.* ("We relied on Dr. Gorrichategui for his opinions on the technical aspects of the infringement chart.")). But Rule 11 obligated him to perform his own independent analysis. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (referring to "bare minimum" Rule 11 requirement that the "law firm" conduct analysis). That ZT's counsel was admonished in *WPEM* for the same failure to inquire about the accused product's prior art status reinforces the inadequacy of ZT's pre-filing investigation here.

V.  **ZT HAD NO BASIS FOR ASSUMING THAT DAMAGES WERE AVAILABLE, AND ZT DID NOT INVESTIGATE THIS**

ZT does not dispute that the accused feature was removed from ESX a decade ago. (ECF No. 36 at 9 (stating only that "alleged deficiencies in ZT's Compliant [*sic*] were discovered at an

5

early stage despite a diligent pre-filing investigation when new information was provided by Defendant"). In contrast to its belief about "swearing behind" ESX 1.5, ZT offers no explanation for its assumption that the feature had not been discontinued and that damages were available.

The copyright notice on the 2002 ESX 1.5 manual would have indicated to ZT that the accused product was available sometime in 2002. (ECF No. 13-3 at 2 ("© 2002 VMware, Inc.").) ZT points to nothing supporting its assumption that the accused functionality remained in ESX as of 2016—the first year for which damages might be available under 35 U.S.C. § 286. Although Dr. Gorrichategui alleges that ZT was "unable to verify" that the accused feature of ESX was not marketed after 2010 (Gorrichategui Decl. ¶ 8), he is silent as to what efforts he undertook, if any, to assess that pre-suit. Nor does he dispute that publicly available information confirms this. *See* Ex. B ("The Architecture of VMware ESXi" at 3 (available at https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/ESXi_architecture.pdf) ("However, the Linux-based service console has been removed . . . . )).

### VI.   ZT'S POST-FILING DILIGENCE IS IRRELEVANT

Much of ZT's opposition relies on post-filing conduct. For example, ZT attempts to explain that it acted diligently in reviewing the publicly available materials provided by VMware, purportedly revising its claim chart, and ultimately dismissing its case.

ZT's arguments miss the point. A Rule 11 motion concerns ***pre-filing conduct*** by a party and its counsel, not post-filing efforts to rectify an unreasonable investigation made after the fact. "Rule 11 *requires* lawyers to think first and file later, on pain of personal liability." *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986) (citation omitted) (emphasis in original). Under governing Fifth Circuit law, post-filing diligence is of no moment in considering a party's deficient pre-filing diligence under Rule 11. *See Thomas*, 836 F.2d at 874 ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed

6

on the document.").[3]

All of ZT and its counsel's conduct leading up to ZT's Complaint plainly show a Rule 11 violation. ZT conducted a cursory infringement analysis of the accused product. Its counsel reviewed that analysis, but failed to conduct his own additional, independent analysis. Neither ZT nor its counsel searched for publicly available materials showing ESX 1.5's release date and non-prior art status. And neither ZT nor its counsel determined whether the specific accused feature was even available after 2016, as to permit the recovery of damages.

If ZT's post-complaint diligence were relevant, it would merely reinforce ZT and its counsel's Rule 11 violation. ZT alleges that, "[a]fter a very thorough re-review of claim 1 of the '583 patent compared to the ESX 1.5, [ZT] can show that the ESX 1.5 does not in fact disclose every feature of claim 1." (ECF No. 36 at 8.) If true, that begs the question of why ZT did not perform that "very thorough []review" before filing this lawsuit. (*Id.*) This simply confirms that ZT, by its own admission, improperly accused VMware of infringement as ZT now alleges that the product it previously accused of infringement ***does not infringe***.

In sum, ZT's opposition confirms that its original infringement theory was non-meritorious—whether because the patent is invalid, or because it is not infringed.

### VII.   CONCLUSION

ZT should never have filed this lawsuit, and it certainly should not have maintained it. By conceding its original infringement theory was meritless, and by belatedly offering an alternative theory with the same defects, ZT's opposition confirms that its pre-suit investigation was inadequate and that ZT never had a meritorious case.

---

[3] ZT's counsel suggests that the August 2022 death of a firm attorney delayed ZT's post-suit diligence efforts. (Ramey Decl. ¶ 9.) Although VMware is saddened to hear of his passing, those post-suit efforts are irrelevant to the Rule 11 analysis.

Despite being admonished for the same error previously, and despite VMware's repeated notice of the grave defects in ZT's infringement theory, ZT's counsel persisted with this case. That prior admonishment clearly was insufficient to deter ZT's counsel from repeating the same mistakes again.

ZT's and its counsel's egregious conduct has forced VMware to expend significant sums preparing, filing, and serving a motion to dismiss, a motion for Rule 11 sanctions, and an exceptional case motion in a baseless lawsuit. Because ZT had no sound excuse for accusing ESX 1.5 of infringement, and to advance Rule 11's twin policies of deterrence and compensation, VMware respectfully requests that the Court sanction ZT and its counsel and award VMware its attorney's fees.[4]

---

[4] VMware had incurred $104,915 in attorney's fees as of its opening brief. Should the Court agree that VMware is entitled to its fees and costs, VMware will submit information relating to its more recent fees and any other required information to corroborate its fees and costs.

8

September 12, 2022

s/Richard S.J. Hung
Richard S.J. Hung
Diek Van Nort
Davis P. Clark (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
425 Market Street, Suite 3500
San Francisco, California 94105
P (415) 268-7000
F (415) 268-7522
rhung@mofo.com
dvannort@mofo.com
dclark@mofo.com

Berkeley Fife
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
P: (650) 813-5600
F: (650) 494-0792
bfife@mofo.com

Caleb Woods
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
P: (202) 887-1500
F: (202) 887-0763 or (202) 887-0764
calebwoods@mofo.com

Steven Callahan
 Texas State Bar No. 24053122
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
P: (214) 521-6400
F: (214) 764-8392
scallahan@ccrglaw.com

*Attorneys for Defendant VMware, Inc.*

9

## CERTIFICATE OF SERVICE

      I hereby certify that, on September 12, 2022, I filed the foregoing document via the Court's ECF system, which will send notice of the filing to counsel for Plaintiff.

s/Steven Callahan
Steven Callahan

10