UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZT IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-0970-X |
| | § | |
| VMWARE, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant VMware, Inc.'s ("VMware") motion to dismiss for failure to state a claim [Doc. No. 13], VMware's motion for sanctions [Doc. No. 25], and VMware's motion for attorney's fees [Doc. No. 27]. For the reasons explained below, the Court **GRANTS** the motion for attorney's fees, **DENIES** the motion for sanctions, and **FINDS AS MOOT** the motion to dismiss.

### I. Factual Background

ZT IP, LLC ("ZT") and VMware, both design and sell software, among other things. VMware, on May 13, 2002, released a software called ESX Server version 1.5 ("ESX 1.5") along with a user manual describing its features and functionality. The manual bears a 2002 copyright date. A year later, on May 20, 2003, an application for U.S. Patent No. 7,647,583 ("the '583 patent") was filed. The '583 patent relates to a method and apparatus for emulating a hardware or software system using a computer. The U.S. Patent and Trademark Office issued the '583 patent on January 12, 2010, and it was later assigned to ZT, who is now the owner. On May 2, 2022, ZT

1

filed this suit, alleging that VMware infringed on ZT's '583 patent with ESX 1.5. Within its complaint, ZT exclusively points to the ESX 1.5 user manual to show VMware's alleged infringement. Somehow, amidst extensive references to the ESX 1.5 user manual, ZT failed to notice that VMware released ESX 1.5 in 2002, a year before the '583 patent application. This is where the questions before the Court today really begin.

After VMware received notice of ZT's suit against it, VMware alleges that it "contacted ZT repeatedly (through in-house and outside counsel) to identify obvious deficiencies in the Complaint."[1] VMware explained to ZT's counsel by using publicly available VMware documentation that ESX 1.5 predated the '583 patent's filing date. It then asked ZT to dismiss its complaint so that both parties could avoid unnecessary litigation expenses. ZT then requested another meeting but skipped it. VMware responded by reminding ZT (with evidence) of the '583 patent's invalidity and the unavailability of damages. ZT did not respond.

So, VMware retained outside counsel who (1) explained the issues again to ZT, (2) warned ZT that its conduct might lead to sanctions, and (3) reminded ZT that its counsel's similar conduct led to a fee award in a prior case. ZT still did not heed VMware's warnings, and VMware moved to dismiss for failure to state a claim. Ten days later, the message got through to ZT, and it filed a notice of dismissal for all its claims with prejudice. However, in its notice of dismissal, ZT included a request that

---

[1] Doc. No. 13 at 8.

"each party shall bear its own costs, expenses and attorneys' fees."[2] VMware opposed this and subsequently moved for sanctions and attorney's fees.

## II. Legal Standards

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "An exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[3] Patent litigants establish their entitlement to fees under Section 285 by a preponderance of the evidence standard.[4] "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[5] In determining whether to award fees, district courts can consider a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[6] Additionally, "there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of" such considerations."[7]

---

[2] Doc. No. 17 at 1.

[3] *WPEM, LLC v. SOTI Inc.*, 837 F. App'x. 773, 774 (Fed. Cir. 2020) (cleaned up).

[4] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014).

[5] *Id.* at 554.

[6] *Id.* at 554 n.6 (cleaned up).

[7] *Id.* at 554 (cleaned up).

### III. Analysis

The Court will address the motion for fees first before turning to the motion for sanctions.

### A. Motion for Fees

To receive attorney's fees under Section 285, VMware must be a prevailing party and the case must be exceptional. ZT does not dispute that VMware is a prevailing party under Section 285.[8] Therefore, the award of attorney's fees hinges on whether the case is exceptional.

The Court today does not hold that an exceptional case is one in which a plaintiff conducted a diligent pre-filing investigation but failed to uncover information demonstrating that its claims lack merit. Instead, the Court today looks at ZT's own evidence and sees that ZT conducted an inadequate investigation because it did not see what clearly stood before it: the obvious and essential fact that VMware released ESX 1.5 in 2002. ZT did not understand its own submissions of claim charts which referenced documents that read "2002" in direct reference to ESX 1.5.

Furthermore, it is clear that even if ZT could not somehow locate the documents it cited that demonstrated a 2002 release date, or if ZT could not access the readily available public information on the internet showing the 2002 release date of ESX 1.5, ZT could have undoubtedly uncovered this information in less than a minute after being alerted to it by VMware. VMware provided all the information for

---

[8] ZT dismissed its own claim with prejudice, and "[t]he dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004).

4

ZT to quickly realize that it had no claim and that it should have dropped the suit before any of the parties spent unnecessary fees. Put another way, this case is exceptional because it extends beyond an ordinary patent suit in which a party conducts an adequate pre-filing investigation, discovers claim-ending deficiencies, and promptly dismisses the claims or discloses the deficiencies to the other party so that it does not incur unnecessary fees.

VMware argues that the case is exceptional. It claims that one of the reasons this case is exceptional is because "ZT lacked a good-faith basis to bring this action and did not conduct an adequate pre-suit investigation."[9] Specifically, VMware argues that ZT unreasonably continued pursuing its claims even after extensive notice from VMware that its claims could not progress.

VMware correctly points out that a long-established principle of patent law is that "that which infringes if later anticipates if earlier."[10] In simpler terms, if VMware's product, ESX 1.5, predates ZT's allegedly infringed patent, then ESX 1.5 did not infringe. Based on the information before the Court, ESX 1.5 predates ZT's '583 patent.[11] Moreover, as VMware points out, readily available public materials show that ESX 1.5 predates the '583 patent.[12] Furthermore, if ZT were to argue that it somehow could not find the public information (which is almost an objective

---

[9] Doc. No. 27 at 14.

[10] *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556,1573 (Fed. Cir. 1986) (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)).

[11] The Court notes that it considers these issues only in an analysis of the strength of ZT's litigation position and expresses no opinion on the ultimate merits of these issues.

[12] Doc. No. 27 at 15.

5

impossibility), it still inadvertently proved it had access to some relevant information because its own claim charts attached to the complaint contain citations to materials bearing a 2002 copyright date.[13] Either ZT frivolously cited a document that it did not review, or ZT reviewed the document and saw the date but ignored it.

And whether it acted in ignorance or negligence, ZT looks worse because of its counsel's previous failure in a similar situation. Two years ago, in another patent suit in the Eastern District of Texas, ZT's counsel William Ramey represented plaintiff WPEM, LLC.[14] There, Judge Gilstrap wrote the following:

> Additionally, and crucially, the Court finds that WPEM conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent. Even the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability SOTI now asserts. Having failed to conduct a pre-filing investigation, the Court finds that WPEM has unreasonably subjected SOTI to the costs of litigation and should properly bear its attorneys' fees.[15]

ZT finds itself in a similar position today with Ramey again serving as counsel. The standard for an exceptional case does not change based on counsel's previous failures; however, a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence. Here, it is clear that ZT's counsel should have been aware enough to recognize the importance of scrutinizing pre-filing materials (or

---

[13] Doc. No. 1-1 at 3 (ZT's complaint cites VMware's User's Manual ESX Server Version 1.5, which has a 2002 copyright stamp).

[14] *See WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *aff'd,* 837 F. App'x 773 (Fed. Cir. 2020).

[15] *Id.* at *3.

conducting an adequate pre-filing investigation in general) before bringing suit. If ZT performed a simple search on the internet or looked at the materials it cited, it would have seen information showing a May 13, 2002, release date of ESX 1.5. ZT, however, did not do this.

Furthermore, part of ZT's infringement claim included ESX 1.5's service console. As VMware points out, publicly available information shows that it removed the service console in 2010. As 35 U.S.C. § 286 points out, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." Therefore, if ZT had adequately investigated its claims to see that VMware removed the service console in 2010, it would have recognized that it could not recover damages. But ZT missed this piece of information.

Yet VMware argues that this case is exceptional not *just* because the ESX 1.5 predates ZT's allegedly infringed patent, or because ZT failed to see that the service console was removed ten years ago. It argues this case is exceptional because of the various occurrences within the litigation leading up to ZT's notice of dismissal. Specifically, VMware highlights the timing of events and ZT's (and ZT's counsel's) conduct.

ZT filed its complaint on May 2, 2022. A month later, on June 1, 2022, both parties conducted a conference in which VMware alerted ZT to the fact that ESX 1.5 was commercially released over a year before the '583 patent's priority date.[16] ZT

---

[16] Doc. No. 27 at 10.

does not dispute that VMware's in-house counsel presented documents (as well as public links) showing the commercial release date and explained that VMware removed the service console in 2010. ZT admits in its response that it asked for a follow-up meeting one week later, but it failed to mention (and failed to deny), that it did not show up to that very meeting. The day after ZT failed to show up to the meeting, VMware's in-house counsel wrote ZT to inform it that VMware would have to move forward with its defenses; again, VMware noted the publicly available information regarding the release date of ESX 1.5.[17] ZT did not respond to this, nor did it respond to another letter that VMware wrote it five days later, on June 13, that again explained how ZT lacked a good-faith basis to bring the claim and that VMware would pursue recovery of fees and costs if ZT did not dismiss the suit.[18] ZT does not dispute any of this.

On June 21, VMware served ZT with a draft of its Rule 11 motion.[19] ZT still did not dismiss the case. On July 8, VMware filed its motion to dismiss, and ZT did not respond. Five days later, on July 13, VMware requested a meet and confer in advance of filing its Rule 11 motion, and though ZT did not initially respond, it finally did—breaking six weeks of silence—and the two parties agreed to meet and confer on July 18. ZT does not dispute what occurred at the meeting nor does it dispute its counsel's use of expletives directed at VMware during the conference. ZT dismissed its complaint with prejudice less than thirty minutes after the conclusion of the call.

---

[17] *Id.* at 6–7.

[18] *Id.* at 7.

[19] *Id.*

8

These undisputed facts serve to underline the exceptional nature of this case. Put bluntly, ZT had ample opportunities to recognize the frivolousness of its position or, at least, to keep VMware apprised of its analysis of the claims. However, ZT did not need to spend weeks to realize that what VMware told it and showed it was true. The half-hour that elapsed between the final conference call and ZT's filing of its dismissal underscores the simplicity of the resolution. ZT did not need all the time it took. ZT did not need to avoid responding to VMware. ZT needed to conduct an adequate pre-filing investigation and act diligently when it became aware that its investigation was inadequate. The Court does not require perfection of pleadings, but it demands diligence on the part of the parties. For these reasons, this case is exceptional, and the Court **GRANTS** VMware's motion for attorney's fees.

### B. Motion for Sanctions

VMware argues that ZT's actions deserve sanctions. Under Rule 11, the Court may grant sanctions when a party improperly certifies a document filed with the court that (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "the claims, defenses, and other legal contentions are warranted by existing law"; (3) "the factual contentions have evidentiary support"; and (4) "the denials of factual contentions are warranted on the evidence or, if specifically identified, are reasonably based on belief or a lack of information."[20] Courts have a duty to "impose the least severe sanction

---

[20] FED R. CIV. PROC. 11(b).

9

adequate" to deter future conduct.[21]  In determining whether a pleading violates Rule 11(b), courts use an objective standard of reasonableness focusing on the attorney's conduct at the time the pleading presented to the court was signed.[22]  However, the moving party has the burden to overcome the "presumption that pleadings are filed in good faith."[23]

Despite a previous warning to ZT's counsel in a similar situation and despite the unnecessary delays ZT's counsel caused, as the Court seeks to impose the least severe sanction to deter future conduct, it finds that fees are sufficient to deter future conduct.  Therefore, the Court **DENIES** the motion for sanctions.

### III. Award of Attorney's Fees

The Court has discretion to determine the amount of the attorney's fees award.[24]  "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, inter alia, the billing rate charged and the number of hours expended."[25]

The Court reviewed the bills VMware submitted and finds that the billing rates were reasonable.[26]  The Court also finds the number of hours expended defending the suit to its voluntary dismissal was reasonable.  However, the Court finds that the fees

---

[21] *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992).

[22] *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873–74 (5th Cir. 1988).

[23] *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

[24] *Lam, Inc. v. John-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983).

[25] *Id.*

[26] Doc. No. 28.

incurred while pursuing the sanctions motion after the dismissal were not proportional.

VMware's invoices reflect that it incurred $104,914.80 in attorney's fees with approximately $48,378.71 on the sanctions and fees motions.[27] "[R]easonable attorney's fee[s] within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation."[28] To that end, "reasonableness" "necessarily embraces an inquiry by the court as to the extent to which the nonviolating party's expenses and fees could have been avoided or were self-imposed."[29] "A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses," and "[i]f a litigant fails to do so, the district court may exercise its discretion and [] reduce the award accordingly."[30]

Here, both parties recognize that ZT voluntarily withdrew its lawsuit on July 18, 2022, thirty minutes after the parties ended their conference call.[31] However, after that, VMware incurred at least another $25,568.91 pursuing the present sanctions motion.[32] In light of the Court's denial of the motion for sanctions, the Court finds that a reasonable amount of fees incurred on or after July 18, 2022 for the sanctions motion is $12,784.46. This sum represents one-half of the amount

---

[27] Doc. No. 25 at 6; Doc. No. 28 at 4–19.

[28] *Thomas*, 836 F.2d at 879.

[29] *Id.*

[30] *Id.*

[31] Doc. No. 36 at 3; Doc. No. 25 at 9.

[32] Doc No. 28-1–3. This number represents the sum of billing entries on July 18, 2021 or later that refer directly to "Rule 11."

VMware had billed for work on the sanctions motion on or after July 18, when ZT voluntarily dismissed its case. The solution to ZT spending too little time investigating its case is not VMware's spending too much time after the case was dismissed. The Court finds this amount more reasonably represents a proportional additional amount of recoverable fees. Accordingly, the Court finds that VMware is entitled to total fees of $92,130.35.

## IV. Conclusion

The Court **GRANTS** VMware's motion for attorney's fees. The Court **AWARDS** VMware attorney's fees in the total amount of $92,130.35, which shall be due and payable in full by ZT within 30 days from the issuance of this Order.

**IT IS SO ORDERED** this 6th day of February, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE