# IN UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |
|---|---|
| ZT IP, LLC,<br><br>    **Plaintiff,**<br><br> **v.**<br><br>**VMWARE, INC.,**<br><br>    **Defendant.** | Case No. 3:22-cv-970-X<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT VMWARE, INC.'S
## <u>MOTION TO AMEND THE JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 1

    A.    The Parties ...................................................................................................... 1

        1.    Plaintiff ZT........................................................................................ 1

        2.    Responsible Parties Pueblo Nuevo, Entente, Dynamic IP, David Ghorbanpoor, and Carlos Gorrichategui................................................ 2

        3.    Responsible Parties William Ramey and Ramey LLP .............................. 4

        4.    Defendant VMware............................................................................ 6

    B.    The Relevant Events ...................................................................................... 6

        1.    VMware Releases the Accused Product in 2002 ...................................... 6

        2.    The '583 Patent Is Filed in 2003 ........................................................ 7

        3.    ZT Files Suit, Relying Extensively on the 2002 User Manual .................. 7

        4.    VMware Repeatedly Tells ZT that the Accused Product Predates the Patent and that Damages Are Unavailable................................................ 9

        5.    ZT Finally Dismisses Its Complaint ...................................................... 10

        6.    This Court Finds the Case to be Exceptional and Awards VMware Its Fees, but Declines to Impose Sanctions.................................................... 11

        7.    ZT Does Not Pay, and Post-Judgment Discovery Reveals that It Is a Judgment-Proof Shell Company ............................................................ 12

III.    ARGUMENT........................................................................................................... 13

    A.    Rule 60(b) Allows Courts Broad Discretion to Reopen a Judgment.................... 13

    B.    Ample Grounds Support Amending the Judgment to Add the Responsible Parties under Rule 60(b)(2)......................................................................................... 14

    C.    Rule 60(b)(6) Also Supports Reopening the Judgment ........................................ 16

    D.    The Responsible Parties Should Be Jointly and Severally Liable ........................ 17

        1.    The Responsible Parties Did Not Adequately Review Public Materials Showing that ESX 1.5 Predates the '583 Patent ...................................... 18

i

2.      The Responsible Parties Did Not Adequately Review Public Materials Showing VMware Removed the Service Console Essential to its Infringement Theory ................................................................................ 20

3.      The Responsible Parties Ignored the Proof of Non-Infringement and No Damages........................................................................................................ 21

4.      The Responsible Parties' Unreasonable Litigation Conduct Further Supports Amending the Judgment to Make Them Jointly and Severally Liable ........................................................................................................... 22

5.      The Responsible Parties' Structuring Their Relationships to Shield Them from Liability Also Supports Amending the Judgment to Make Them Jointly and Severally Liable............................................................... 23

6.      Mr. Ramey and Ramey LLP's History of Unreasonable Patent Litigation Further Supports Holding Them Liable for the Court's Fee Award......... 24

E.      The Responsible Parties Should Be Jointly and Severally Liable for $92,130.35 of VMware's Attorneys' Fees Previously Awarded and for the Additional Fees Incurred Since ............................................................................................................. 25

IV.     CONCLUSION............................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All. for Good Gov't v. Coalition for Better Gov't,*
    998 F.3d 661 (5th Cir. 2020) ...........................................................18, 25

*Carroll v. Jaques Admiralty Law Firm, P.C.,*
    110 F.3d 290 (5th Cir. 1997) .................................................................23

*Chilson v. Metro. Transit Auth.,*
    796 F.2d 69 (5th Cir. 1986) ...................................................................13

*Eon-Net LP v. Flagstar Bancorp,*
    653 F.3d 1314 (Fed. Cir. 2011)..............................................................25

*Iris Connex, LLC v. Dell, Inc.,*
    235 F. Supp. 3d 826 (E.D. Tex. 2017)..............................................17, 25

*Judin v. United States,*
    110 F.3d 780 (Fed. Cir. 1997)................................................................19

*Marrin v. Griffin,*
    599 F.3d 1290 (Fed. Cir. 2010)..............................................................18

*NetSoc, LLC v. Chegg Inc.,*
    No. 18-cv-10262, 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020)...........20

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
    572 U.S. 545 (2014).................................................................................22

*Oplus Techs., Ltd. v. Vizio, Inc.,*
    782 F.3d 1371 (Fed. Cir. 2015)..............................................................23

*Phigenix, Inc. v. Genentech, Inc.,*
    No. 15-cv-01238, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018).........17

*Polaroid Corp. v. Eastman Kodak Co.,*
    789 F.2d 1556 (Fed. Cir. 1986)..............................................................18

*Ramey & Schwaller, LLP v. EMED Techs. Corp.,*
    No. 21-cv-02036, 2021 WL 5202436 (S.D. Tex. Nov. 8, 2021)...........20

*Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.,*
    No. 15-cv-01431, 2019 WL 6002198 (E.D. Tex. Mar. 11, 2019).........17

*SAP Am., Inc. v. InvestPic LLC*,
    No. 16-cv-02689, 2021 WL 1102085 (N.D. Tex. Mar. 23, 2021)................................*passim*

*Seven Elves, Inc. v. Eskenazi*,
    635 F.2d 396 (5th Cir. 1981) ...............................................................................13

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 19-cv-243, 2022 WL 1447946 (N.D. Tex. Feb. 9, 2022) ................................22

*Stewart v. RCA Corp.*,
    790 F.2d 624 (7th Cir. 1986) ...............................................................................21

*Traxcell Techs., LLC v. ALE USA, Inc.*,
    No. 18-cv-6736, 2019 WL 6895982 (C.D. Cal. Jan. 2, 2019).............................20

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................................18

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)..............................................................................18

*WPEM LLC v. SOTI Inc.*,
    No. 18-cv-156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020) .................*passim*

**Statutes**

35 U.S.C. § 102(b) ........................................................................................................9, 19

35 U.S.C. § 285..............................................................................................11, 17, 18, 23

35 U.S.C. § 286....................................................................................................................21

**Other Authorities**

Fed. R. Civ. P.
    11.....................................................................................................10, 11, 20, 23
    60(b).....................................................................................................13, 14, 16

VMware, Inc. ("VMware") moves to reopen and amend the judgment to make Dynamic IP Deals LLC ("Dynamic IP"), Pueblo Nuevo LLC ("Pueblo Nuevo"), Entente IP LLC ("Entente"), Carlos Gorrichategui, David Ghorbanpoor, William Ramey, and Ramey LLP (collectively, "Responsible Parties") liable for the February 6, 2023 fee award (ECF No. 43).

## I.      INTRODUCTION

After ZT IP, LLC ("ZT") voluntarily dismissed its case without replying to VMware's motion to dismiss, the Court found the case exceptional and awarded fees of $92,130.35.  Five months after the Court's payment deadline, however, VMware has yet to receive a dime.

Lacking other recourse, VMware undertook post-judgment discovery from ZT.  ZT's responses revealed that it was formed as a judgment-proof shell company to wage meritless litigation—and to help its owners and managers avoid liability and responsibility for its conduct.

VMware therefore moves to re-open and amend the judgment to add the related persons and entities who contributed to making this case exceptional.  By reopening the judgment to make the Responsible Parties jointly and severally liable, the Court would confirm that all those involved are responsible for ZT's conduct.

## II.     BACKGROUND

### A.      The Parties

#### 1.      Plaintiff ZT

Plaintiff ZT is a Texas LLC formed by Mr. Ramey on February 28, 2022.  (Ex. 1.)[1]   ZT shares its address with Pueblo Nuevo of Austin, Texas.  (*Id.*; *see also* Ex. 2 at Resps. 1, 3.)  ZT's sole assets are seven patents, including U.S. Patent No. 7,647,583 ("the '583 patent"), and a bank account with $175.  (Ex. 2 at Resps. 8, 14.)   ZT sued VMware for alleged infringement of the

---

[1] Unless otherwise noted, all exhibits are to the Declaration of Richard Hung in Support of ZT's Motion to Join and Motion to Amend ("Hung Decl.").

'583 patent on May 2, 2022.  (ECF No. 1.)

### 2. Responsible Parties Pueblo Nuevo, Entente, Dynamic IP, David Ghorbanpoor, and Carlos Gorrichategui

ZT is managed or owned by multiple parties, including Entente, David Ghorbanpoor,

Carlos Gorrichategui, Pueblo Nuevo,[2] and Dynamic IP.  (Ex. 2 at Resps. 3, 4.)  Reflecting the

parties' interrelated nature, their public filings confuse who manages or owns whom and when.

Per ZT's amended certification of formation, its two managers are Entente of Chicago,

Illinois[3] and **Pueblo Nuevo** of Austin, Texas.  (Ex. 4.)  But in his declaration to the Court to try

to avoid fees and sanctions, Entente's principal identified **Dr. Gorrichategui** as ZT's co-

manager.  (ECF No. 35-5 ¶ 2 (referring to Entente's "co-manager, Carlos Gorrichategui").)[4]

Pueblo Nuevo's ownership, in turn, is equally unclear.  In his declaration to this Court,

Dr. Gorrichategui identified **himself** as "an owner and principal of Pueblo Nuevo."  (ECF No.

35-3 ¶ 1.)  But other documents identify Austin-based **Dynamic IP**—a "[t]echnology and . . .

[IP] [m]onetization" company—as Pueblo Nuevo's sole owner.  (Exs. 5 (at 1), 6, 7.)[5]

Dr. Gorrichategui controls Dynamic IP.  (Ex. 10 at 36:20-23 (testifying to control).)

Regardless of who formally manages or owns whom, Dr. Gorrichategui plainly

controlled ZT's actions and decisions in this lawsuit as a practical matter.  In his declaration

---

[2] Pueblo Nuevo apparently also is managed by Hernan Perez (Ex. 2 at Resp. 5), but he does not appear to have been involved in making this case exceptional.

[3] ZT's interrogatory responses also identify a Milwaukee, Wisconsin address for Entente.  (Ex. 2 at Resp. 3.)  Corporate records indicate that Entente is a Delaware company.  (Ex. 3.)

[4] Mr. Ghorbanpoor and Dr. Gorrichategui each submitted two identical declarations in opposition to VMware's motions for an exceptional case, attorneys' fees, and sanctions.  (ECF Nos. 35-3, 36-3 (Ghorbanpoor declarations); ECF Nos. 35-5, 36-5 (Gorrichategui declarations).)

[5] Still other documents confusingly identify Mr. Perec as Pueblo Nuevo's sole owner.  *See Missed Call LLC v. Freshworks*, No. 22-cv-739, Dkt. No. 34 (Rule 7.1 statement) (D. Del. September 2, 2022).  (Ex. 8.)  But the *Missed Call* disclosure postdates both the May 2, 2022 Complaint in this action (ECF No. 1) and May 16, 2022 Texas corporate filings attesting to Dynamic IP's sole ownership of Pueblo Nuevo.  (*See* Exs. 7, 8, 9.)

opposing sanctions and fees, Dr. Gorrichategui repeatedly underscored the lack of distinction as among ZT, Pueblo Nuevo, and himself.  When referring to ZT's conduct and ZT's lawyers, Dr. Gorrichategui consistently spoke in the first person singular.  *E.g.*:

- "In preparation for the present litigation, ZT IP LLC reviewed Defendant's product documentation available on Defendant's website for the ESX 1.5. . . . *I* noted that one of the documents from the website carried a 2002 copyright date ('2002 Document'), but *I* could not determine an actual publication date." (ECF No. 35-3 ¶ 2.)

- "Based on this information, *I* intended to swear behind the publication. . . ." (*Id.*)

- "*I* only became aware that the actual publication date of the 2002 Document was in May of 2002 when Defendant sent *my lawyer* a website link." (*Id.* ¶ 3.)

- "On or about June 1, 2022, *I* began to work with the inventors and David Ghorbanpoor to address the issues Defendant raised in its communications with *my lawyers*." (*Id.* ¶ 4.)

- "*I* was able to report back on June 17, 2022, to *my lawyer*, William Ramey, that the 2002 Document was not needed for our infringement position."  (*Id.*)

- "*I* was able to report back on June 17, 2022, to *my lawyer* that the 2002 Document was not needed for our infringement position.  (*Id.* ¶ 5.)

- "Further, upon renewed consideration of the 2002 Document after Defendant's issues, *I* determined that 2002 Document did not disclose a 'guest operating system' running on top of the 'host operating system' . . . ." (*Id.* ¶ 6.)

- "*I* sent the revised chart to *my lawyer* on June 17, 2022.  *I* included an analysis of why the 2002 Document was not prior art . . . ." (*Id.* ¶ 7.)

- "*I* was later informed by *my lawyer* that based on the Revised Chart and discussion he had with Defendant, he was dismissing the case." (*Id.* ¶ 9.)

- "*My lawyer* informed *me* that as he was not done with his diligence, but in light of the Rule 11 allegations, it was better to dismiss." (*Id.*)

(All emphases added.)  In total, Dr. Gorrichategui referred to himself when describing ZT's actions eleven times.  He also referred to ZT's lawyers as his own seven times.

Entente and its owner and manager, David Ghorbanpoor (ECF No. 35-5 ¶¶ 1, 2), also contributed to ZT's actions in this case.  In his declaration, Mr. Ghorbanpoor explained that it was he who initially contacted the inventor and forwarded a claim chart to Dr. Gorrichategui.

(*Id.* ¶ 2.)  Mr. Ghorbanpoor also reviewed materials relating to ZT's infringement positions and claimed to be unable to verify materials readily found online.  (*Id.* ¶¶ 3-7.)

The relationships among ZT, Pueblo Nuevo, Entente, Dynamic IP, David Ghorbanpoor, and Carlos Gorrichategui thus appear to be as follows:



### 3.    Responsible Parties William Ramey and Ramey LLP

William Ramey and his law firm, Ramey LLP, have represented ZT in this litigation since the start.[6]  Both are located in Houston, Texas.  (Ex. 2 at Resp. 3.)

Mr. Ramey has a longstanding and deep relationship with ZT, Pueblo Nuevo, Dynamic IP, and Dr. Gorrichategui.  As noted, Mr. Ramey was involved with forming ZT on February 28, 2022.  (Ex. 1 at 2.)  He also was involved with organizing Pueblo Nuevo in 2020.  (Ex. 6 at 2.)

Mr. Ramey has represented at least ***ten*** entities owned by or related to Dynamic IP, *see* Ex. 7 (Section B),[7] and therefore associated with Dr. Gorrichategui:

---

[6] Mr. Ramey says he no longer represents ZT (Ex. 11), but has not sought leave to withdraw.
[7] In other litigation, a defendant alleged that Dynamic IP entities—almost all represented by Mr. Ramey and his firm—filed 270+ lawsuits in 30 months.  (*See* Ex. 12 at 2-3.)

| Entity | Case[8] |
|---|---|
| mCom IP, LLC | *mCom IP, LLC v. DH Corp.*, No. 21-cv-197, ECF No. 1 at 12 (W.D. Tex. Mar. 2, 2021) (Ex. 14). |
| Cybersoft IP, LLC | *Cybersoft IP, LLC v. Kaspersky Lab, Inc.*, No. 21-cv-10704, ECF No. 1 at 8 (D. Mass. Apr. 28, 2021) (Ex. 15). |
| AML IP, LLC | *AML IP, LLC v. Stripe, Inc.*, No. 22-cv-01257, ECF No. 1 at 5 (W.D. Tex. Dec. 5, 2022) (Ex. 16). |
| Silent Communications, LLC | *Silent Communications, LLC v. BlackBerry Corp.*, No. 22-cv-252-ADA, ECF No. 1 at 10-11 (W.D. Tex. Mar. 8, 2022) (Ex. 17). |
| PacSec3, LLC | *PacSec3, LLC v. NetScout Systems, Inc.*, No. 20-cv-914, ECF No. 1 at 16 (W.D. Tex. Oct. 2, 2020) (Ex. 18). |
| Datrec, LLC | *Datrec, LLC v. AllegianceMD Software, Inc.*, No. 21-cv-543, ECF No. 2 at 9 (N.D. Okla. Dec. 17, 2021) (Ex. 19). |
| AuthWallet, LLC | *AuthWallet, LLC v. CIBC Bank USA*, No. 23-cv-141, ECF No. 1 at 5 (W.D. Tex. Feb. 22, 2023) (Ex. 20). |
| GeoTag IP, LLC | *GeoTag IP, LLC v. NXP USA, Inc.*, No. 22-cv-125, ECF No. 1 at 23 (W.D. Tex. Feb. 4, 2022) (Ex. 21). |
| Gold IP LLC | *Gold IP LLC v. Augury Inc.*, No. 21-cv-4788, ECF No. 1 at 12 (S.D.N.Y. May 28, 2021) (Ex. 22). |
| Missed Call, LLC | *Missed Call, LLC v. Freshworks, Inc.*, No. 22-cv-739, Dkt. No. 34 at 13:19-14:18 (D. Del. Nov. 21, 2022) (Ex. 23) (identifying Pueblo Nuevo as Missed Call's owner and Dr. Gorrichategui as its manager, and further noting that Mr. Ramey's invoices were sent to "DINA IP Deals" [*sic*],[9] another entity managed by Dr. Gorrichategui). |

Mr. Ramey also represented Safe IP LLC, an entity co-owned by Entente (and thus Mr. Ghorbanpoor). (Ex. 24.) Adding Ramey LLP and Mr. Ramey to the prior diagram yields:

---

[8] Lex Machina, a litigation research service by Lexis, reports that Mr. Ramey was counsel of record in 211 lawsuits filed by these entities. (*See* Ex. 13.)

[9] Per Mr. Gorrichategui, "DINA IP" refers to Dynamic IP. (Ex. 9 at 36:17-23.)



### 4.    Defendant VMware

VMware is a market-leading cloud computing and virtualization technology company based in Palo Alto, California.  (ECF No. 25-1 ¶ 2.)

### B.    The Relevant Events

### 1.    VMware Releases the Accused Product in 2002

VMware commercially released the accused product, ESX version 1.5 ("ESX 1.5"), on May 13, 2002.  (ECF No. 25-10 at 1-2.)  When releasing ESX 1.5, VMware made available a user manual describing its features and functionality.  (ECF No. 13-3.)  That manual, which bears a 2002 copyright date, confirms ESX 1.5's public availability in 2002 (*id.* at 2):

Although ESX 1.5 included a "Service Console" functionality on release, that feature was discontinued in 2010.  (ECF No. 25-10 at 2; ECF No. 25-12; ECF No. 25-1 ¶¶ 8-9).)  VMware discontinued ESX in favor of its "ESXi" platform in 2013.  (ECF No. 25-13.)

### 2.    The '583 Patent Is Filed in 2003

The application for the asserted patent, U.S. Patent No. 7,647,583 ("the '583 patent") was filed on May 20, 2003—over a year *after* ESX 1.5's release (ECF No. 1-2 at Cover):

### 3.    ZT Files Suit, Relying Extensively on the 2002 User Manual

Represented by Mr. Ramey and Ramey LLP, ZT sued VMware for allegedly infringing the '583 patent on May 2, 2022.  In its Complaint, ZT accused ESX 1.5 of infringement and attached a claim chart in support.  (ECF No. 1, ¶¶ 9-10; ECF No. 1-1 at 3.)

Its claim chart cited extensively—and solely—to the 2002 ESX 1.5 User Manual for support.  (ECF No. 1-1 at 1.)  ZT specifically accused ESX 1.5's "Service Console" feature of infringement, referring to it seventeen times:



(*Id.* at 9.)  Neither the Complaint nor the claim chart referred to any product besides ESX 1.5 or

to any documentation besides the 2002 ESX 1.5 User Manual.

Dr. Gorrichategui was personally involved with ZT's decision to file suit.  In his

declaration, he implicitly acknowledged that he reviewed VMware documents "carr[ying] a 2002

copyright date," but claimed to have been unable to "determine [its] actual publication date."

(ECF No. 35-3 ¶ 2.)  He also claimed to have "intended to swear behind the publication date of

the 2002 [manual]" pre-suit (*id.*), but offered no evidentiary support for that position.

The same is true of Mr. Ramey and Ramey LLC.  In his declaration, Mr. Ramey claimed

that Ramey LLC "reviewed the claim chart supplied by [ZT]" and "referenced product

documentation" and determined that the chart and "the supporting links plausibly alleged

infringement."  (ECF No. 35-1 ¶ 3.)  "Based on [his firm's] pre-suit diligence and the client's

pre-suit diligence," Ramey LLP "filed the instant lawsuit."  (*Id.* ¶ 4.)

**4.      VMware Repeatedly Tells ZT that the Accused Product
Predates the Patent and that Damages Are Unavailable**

After ZT filed suit, VMware repeatedly advised ZT (via its lead counsel, Mr. Ramey) of

the deficiencies in its Complaint.  During a June 1, 2022 Zoom call, VMware's in-house counsel

presented documents showing that ESX 1.5 was commercially released over a year before the

'583 patent's priority date.  (ECF No. 25-1 ¶¶ 5–9.)  This meant that, if ESX 1.5 did fall within

the scope of the claims, the '583 patent was invalid under 35 U.S.C. § 102(b).  (*Id.* ¶ 7.)

VMware's in-house counsel also explained that VMware had removed the ESX 1.5 Service

Console (an essential part to ZT's infringement theory) in 2010, precluding any claim for

damages.  (*Id.* ¶¶ 8–9; *see also* ECF No. 13-4 at 1-3 (summarizing June 1, 2022 Zoom call).)

VMware provided public links confirming these representations using Zoom's chat feature, and

Mr. Ramey orally confirmed receipt.  (ECF No. 25-1 ¶¶ 9–10; ECF No. 35-1 ¶ 6.)

In view of these defects, VMware asked Mr. Ramey to dismiss ZT's case immediately.

(ECF No. 25-1 ¶ 11; ECF No. 13-4 at 3.)  Although he requested a follow-up Zoom meeting for

June 8, 2022 to discuss VMware's positions, he failed to show up.  (ECF No. 25-1 ¶¶ 13-14;

ECF No. 13-4 at 3.)  In his declaration, Mr. Ramey offered no excuse for scheduling this call

during a time when he was traveling and then skipping it entirely.  (ECF No. 35-1 ¶ 7.)

On June 9, 2022, VMware's in-house counsel again wrote Mr. Ramey to reiterate the

baseless nature of ZT's Complaint:

> Given all the easily obtainable public evidence above, we see no reasonable basis
> for a finding of infringement and don't believe anyone on the ZT IP team
> conducted a reasonable inquiry to determine that infringement allegations in the
> complaint would be well grounded in fact.  To avoid either side incurring any
> additional legal costs, we wanted to give you and your client a less formal
> opportunity to re-consider the complaint, but you do not seem inclined to timely
> respond despite our efforts, having been 15 minutes late for our first scheduled
> call and missing your own requested follow-up call entirely.  We now will have to
> move forward with our defenses and seek all remedies we feel proper in view of
> the circumstances.

(ECF No. 13-4 at 3.)  VMware's in-house counsel again noted the publicly available materials confirming VMware's positions and asked that ZT dismiss its case.  (*Id.* at 1-3.)  But ZT and its counsel, Mr. Ramey, did not respond.  (ECF No. 25-1 ¶¶ 15-16.)

Having heard nothing, VMware was forced to retain counsel.  Via letter dated June 13, 2022, VMware's counsel again explained to ZT how the Complaint and claim chart illustrated ZT's lack of a good-faith basis for bringing this case.  (ECF No. 13-2.)  VMware specifically advised ZT that it would pursue recovery of its fees and costs if ZT did not dismiss the lawsuit promptly.  (*Id.* at 3.)  But ZT and Mr. Ramey still did not respond.  (ECF No. 25-2 ¶ 6.)

Between June 1, 2022 (when VMware identified the documents proving the futility of ZT's positions) and June 17, 2022, Dr. Gorrichategui claims to have been "work[ing] with the inventors and [Mr.] Ghorbanpoor to address the issues [VMware] raised."  (ECF No. 35-3 ¶ 4.)  Despite alleging that he "tried to complete [his] analysis as quickly as possible," he does not explain why the "diligence t[ook] longer than [he] anticipated."  (*Id.* ¶ 5.)

On June 21, 2022, having still received no response, VMware served a draft of its Rule 11 motion on ZT and Mr. Ramey.  (ECF No. 25-6.)  On July 8, 2022, VMware then moved to dismiss—explaining again that ESX 1.5's prior art status would invalidate the '583 patent and that the Service Console's removal meant that damages were unavailable.  (ECF No. 13.)  But ZT and Mr. Ramey still did not respond.  (ECF No. 25-2 ¶ 5.)

### 5.      ZT Finally Dismisses Its Complaint

On July 13, 2022, VMware asked to meet and confer with ZT's counsel in advance of filing its Rule 11 motion.  (ECF No. 25-7.)  Mr. Ramey initially did not respond.  (*Id.*)  After additional prodding on July 15, 2022—and after ignoring six weeks' worth of correspondence— Mr. Ramey finally agreed to meet and confer on July 18, 2022.  (*Id.*)

At the July 18, 2022 meet and confer, Mr. Ramey claimed that ZT was still evaluating

VMware's positions, as ZT had filed suit only three months earlier.  (ECF No. 25-2 ¶¶ 7-9.)

VMware's counsel responded that any court filing requires a Rule 11 basis.  (*Id*. ¶ 8.)  VMware's

counsel also reminded Mr. Ramey of a 2020 decision awarding fees based on his similar

conduct, *WPEM LLC v. SOTI Inc.*, No. 18-cv-156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4,

2020).  (*Id.*)  VMware's counsel further noted that ZT had received ample opportunity to review

VMware's positions and needed to dismiss its Complaint, at minimum, to avoid sanctions.  (*Id.*)

Mr. Ramey responded with an expletive-filled tirade accusing VMware of "threatening"

him.  (*Id.*)  The meet and confer concluded with VMware's counsel indicating that it would

proceed with its Rule 11 motion, and Mr. Ramey indicating ZT's intent to continue considering

VMware's positions.  (*Id.* ¶ 9.)  Despite claiming a need for additional time to better understand

VMware's positions, ZT dismissed its Complaint with prejudice less than thirty minutes after the

call's conclusion. (ECF No. 17.)  The decision to finally dismiss the lawsuit was Mr. Ramey's.

(ECF No. 35-1 ¶ 11; ECF No. 35-3 ¶ 9 (Dr. Gorrichategui referring to Mr. Ramey's decision).)

> ### 6.     This Court Finds the Case to be Exceptional and Awards VMware Its Fees, but Declines to Impose Sanctions

VMware subsequently moved for an exceptional case finding and its attorneys' fees

under 35 U.S.C. § 285 (ECF No. 27) and for sanctions under Rule 11 (ECF No. 25).  On

February 6, 2023, the Court found the case to be exceptional and awarded VMware attorneys'

fees totaling $92,10.35 under Section 285.  (ECF No. 43 at 12.)  The Court's opinion chronicled

ZT's various failures and misconduct, including:

- "conduct[ing] an inadequate investigation" by "not see[ing] what clearly stood before it: the obvious and essential fact that VMware released ESX 1.5 in 2002" (*id.* at 4);

- failing to "understand its own submissions of claim charts which referenced documents that read '2002' in direct reference to ESX 1.5" (*id.*);

- either "frivolously cit[ing] a document that it did not review," or "review[ing] the document and s[eeing] the date but ignor[ing] it" (*id.* at 6);

11

- failing to "recognize[] that it could not recover damages" (*id.* at 7);

- "ask[ing] for a follow-up meeting" to discuss VMware's positions, but then "not showing up to that very meeting" (*id.* at 8); and

- "us[ing] expletives directed at VMware" during the parties' meet and confer to potentially avoid the Rule 11 motion (*id.*).

It set a deadline of 30 days (March 8, 2023) for ZT to pay the award to VMware. (*Id.*)

Although noting the "previous warning to ZT's counsel" in *WPEM* and the "unnecessary delays [that] ZT's counsel [had] caused," the Court declined to sanction ZT's lawyers. (*Id.* at 10.) It did so based on its desire to "impose the least severe sanction to deter future conduct" and its belief that a fee award would be "sufficient to deter future conduct here." (*Id.*)

### 7.   ZT Does Not Pay, and Post-Judgment Discovery Reveals that It Is a Judgment-Proof Shell Company

ZT did not make the fee award payment to VMware by March 8, 2023, and did not appeal the Court's fee award. VMware thus served post-judgment interrogatories under Rule 69.

In its May 14, 2023 responses, ZT revealed its status as a judgment-proof shell company incorporated for the sole purpose of pursuing litigation and insulating the Responsible Parties from liability. In particular:

- ZT was formed on February 28, 2022, two months before filing suit (Ex. 2 at Resp. 2);

- ZT has no subsidiaries (*id.* at Resp. 7);

- ZT's assets comprise a "patent portfolio" and "nominal contribution capital" (*id.* at Resp. 17);

- Specifically, ZT's sole assets are seven patents (including the '583 patent) and a bank account containing $175 (*id.* at Resp. 14);

- All seven patents were assigned to ZT on the same day (*id.* at Resp. 8);

- ZT paid no cash payment for the patents (*id.*);

- ZT has received only $5,400: $500 as "contribution capital," and $4,900 for attorney retainer payments—both post-judgment, after it already owed money to VMware (*id.* at Resp. 10);

- ZT has not otherwise been paid any money by any person or entity (*id.* at Resp. 9); and

- ZT has paid $5,225 for legal representation in this case (*id.* at Resp. 11).

The Court's judgment has not had a deterrent effect on ZT or its principals and agents. ZT still has not paid the $92,130.35 owed. This is despite its retention of $4,900 post-judgment for legal fees to avoid paying VMware. (*Id.* at Resp. 10.) Worse, VMware has incurred over $40,528.85 attempting to collect on the Court's fee award and preparing this motion. (Ex. 25.)

## III.   ARGUMENT

### A.   Rule 60(b) Allows Courts Broad Discretion to Reopen a Judgment

Rule 60(b) of the Federal Rules of Civil Procedure sets forth the grounds upon which a court may grant relief from a final judgment, order, or proceeding. Under Rule 60(b)(2), a movant seeking to re-open a judgment based on newly discovered evidence must show that: (1) it exercised diligence in obtaining the newly discovered evidence that is the basis of the motion; and (2) the newly discovered evidence is not cumulative, is material, and would have produced a different result. *SAP Am., Inc. v. InvestPic LLC*, No. 16-cv-02689, 2021 WL 1102085, at *2 (N.D. Tex. Mar. 23, 2021) (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005)); *see also Chilson v. Metro. Transit Auth.*, 796 F.2d 69, 72 (5th Cir. 1986).

Under Rule 60(b)(6), a court may re-open a judgment for "any other reason that justifies relief." "Rule 60(b) vests in the district courts power 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401-02 (5th Cir. 1981) (quoting *Klapprott v. U.S.*, 335 U.S. 601, 614-15 (1949)). "[T]he rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Id.* at 401 (quoting *Bankers Mortgage Co. v. U.S.*,

13

423 F.2d 73, 77 (5th Cir. 1970)).

In the Fifth Circuit, the following factors are relevant to deciding a Rule 60(b) motion:

(1)     That final judgments should not be lightly disturbed;

(2)     [T]hat the Rule 60(b) motion is not to be used as a substitute for appeal;

(3)     [T]hat the rule should be liberally construed in order to achieve substantial justice;

(4)     [W]hether the motion was made within a reasonable time;

(5)     [W]hether[,] if the judgment was default or a dismissal in which there was no consideration of the merits[,] the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense;

(6)     [W]hether if the judgment was rendered after a trial on the merits where the movant had a fair opportunity to present his claim or defense;

(7)     [W]hether there are intervening equities that would make it inequitable to grant relief; and

(8)     [A]ny other factors relevant to the justice of the judgment under attack.

*Id.* at 402.

## B.     Ample Grounds Support Amending the Judgment to Add the Responsible Parties under Rule 60(b)(2)

Rule 60(b)(2) warrants reopening the judgment to add the Responsible Parties as jointly and severally liable for the fee award against ZT.  A party's inability to pay a judgment and its status as a "sham or shell entity . . . designed and intended to avoid liability" justify re-opening a judgment under Rule 60(b)(2).  *SAP*, 2021 WL 1102085, at *5.  As VMware learned via post-judgment discovery, that is precisely the case here: ZT is an empty shell of a company with no assets besides its patents and $175 in a single bank account.  (*See* Section II.B.7, *supra*.)  This newly discovered "banking and financial information is more than sufficient to meet [VMware's] burden with respect to setting aside the judgment."  *SAP*, 2021 WL 1102085, at *5.

This evidence is not cumulative, is material, and would have produced a different result

had VMware and the Court known of it when deciding VMware's prior motions.  In its opinion awarding fees but denying sanctions, the Court stated its belief that a fee award would be "sufficient to deter future conduct."  (ECF No. 43 at 10.)  But the fee award here cannot deter future conduct unless the Responsible Parties pay it.  As a judgment-proof shell company, ZT cannot pay the Court's $92,130.35 award and has indicated that it will not do so.  (Ex. 26.)

Allowing the judgment to stand *without* adding the Responsible Parties would only encourage similar future conduct.   That is, the Responsible Parties would simply continue to set up judgment-proof entities as plaintiffs, knowing that neither they nor the plaintiffs would ever be held to account.   The Court presumably would not have viewed its fee award as sufficient to deter such conduct had it known that there was no possibility of its fee award ever being paid.  *See SAP*, 2021 WL 1102085, at *6 (court's misimpression that judgment would "flow through to [plaintiff's] two owners" was new and material evidence warranting setting aside judgment).

The Fifth Circuit's factors favor setting aside the judgment here, with the third factor (the need to "achieve substantial justice") being the most salient.  If the judgment were not re-opened, substantial *injustice* would occur.  Pre-litigation, ZT and the Responsible Parties purposefully structured their relationships to try to render themselves judgment-proof.  After initiating this lawsuit, they then avoided engaging VMware on the merits—even failing to attend a scheduled call and to address written correspondence—and instead forced VMware to prepare motions to dismiss, for sanctions, and an exceptional case finding.

Their apparent belief was that VMware would agree to a nuisance-value settlement rather than pay to defend itself—but that was not the case.  By making the Responsible Parties liable for the judgment, the Court would discourage them and similar repeat players from engaging in corporate shell games or misusing patent litigation to pursue unmerited settlements.

15

The other factors all counsel toward re-opening the judgment or are neutral:

- **Factor 1:** VMware does not seek to disturb the Court's judgment lightly, but only because ZT has not paid the Court's fee award and has revealed itself to be a judgment-proof shell company;

- **Factor 2:** Rule 60(b) is not being used as a substitute for an appeal;

- **Factor 4:** VMware brings this motion within a reasonable time—i.e., within three months of its receipt of ZT's interrogatory responses establishing that ZT is a shell company;

- **Factors 5 & 6:** ZT opposed VMware's exceptional case and sanctions motion, such that the judgment did not issue by default or without consideration of the merits;

- **Factor 7:** There are no intervening inequities that would make it inequitable to add the Responsible Parties as jointly and severally liable parties; and

- **Factor 8:** No other factor supports denying VMware's requested relief.

This District's reasoning in *SAP* is instructive.  In *SAP*, Judge Kinkeade recognized that "[a]llowing the judgment to stand" without joining certain parties would result in the defendant "being unable to obtain substantial justice." 2021 WL 1102085, at *6.  Moreover, unless the judgment were set aside, the plaintiff and "others related to it would be able to circumvent the purpose and effect of § 285." *Id.*

That reasoning applies with equal force here.  Declining to add the Responsible Parties to the judgment would validate their strategy of establishing judgment-proof shell companies as plaintiffs and filing frivolous lawsuits, in the hopes of extracting a quick settlement regardless of the actual case merits and encourage them to continue with these deceptive practices.

### C.      Rule 60(b)(6) Also Supports Reopening the Judgment

Rule 60(b)(6) allows this Court to amend the judgment for similar reasons and to ensure substantial justice.  VMware cannot collect on the Court's fee award from ZT, a shell company with only its patents as collateral and $175 in its bank account.   The Responsible Parties intentionally structured ZT in this manner to achieve this result.  As the Responsible Parties

appear to have a longstanding and continuing relationship (*see* Sections II.A.2 & II.A.3, *supra*), amending the judgment to add them would disincentivize similar future behavior.

### D.    The Responsible Parties Should Be Jointly and Severally Liable[10]

Organizing a shell company to assert a frivolous patent infringement claim does not insulate the company's principals or lawyers from liability for its acts.

In *Iris Connex, LLC v. Dell, Inc.*, for example, the court deemed the case to be exceptional under Section 285 and awarded $355,000 in fees to the defendant.  235 F. Supp. 3d 826, 855 (E.D. Tex. 2017).  The court subsequently extended liability for the fee award beyond the plaintiff itself to the president and sole shareholder of the plaintiff's parent company.  *See id.* at 833-34, 839-40.  It did so after post-judgment discovery revealed that the joined party had "made an intentional decision to create and undercapitalize [the plaintiff] as an empty shell"—one with "no capacity to pay . . . fees even if the case were ultimately declared to be exceptional."  *Id.* at 832, 851.  The court further deemed the joined party's "personal conduct [to have been] the dominant cause making th[e] case exceptional."  *Id.* at 852.

Other courts have reached similar conclusions.  *See, e.g.*, *SAP*, 2021 WL 1102085, at *7-8 (joining certain parties with ownership interest in plaintiff and parties, including plaintiff's law firm, as "responsible for making . . . case exceptional"); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238, 2018 WL 3845998, at *12, 16 (N.D. Cal. Aug. 13, 2018) (joining plaintiff's principal in action where court found that plaintiff "lacks financial resources and [defendant] would be unable to recover a meaningful attorneys' fees award"); *Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*, No. 15-cv-01431, 2019 WL 6002198, at *2 (E.D. Tex. Mar. 11, 2019) (allowing amendment of defendant's counterclaims to add plaintiff's principal as a

---

[10] In this section, VMware repeats much of its prior arguments from its exceptional case motion (ECF No. 25), as to give the Responsible Parties adequate opportunity to respond.

party after plaintiff failed to pay Section 285 attorneys' fee award); *cf. All. for Good Gov't v. Coalition for Better Gov't*, 998 F.3d 661, 666 (5th Cir. 2020) (affirming post-judgment joinder of plaintiff's principal and lawyer, who personally signed meritless filings, as party liable for fee award in trademark infringement action); *United States v. Bestfoods*, 524 U.S. 51, 55 (1998) (recognizing that "corporate parent that actively participated in, and exercised control over, the operations of [a] facility" could be "directly liable in its own right" for CERCLA violation).

VMware urges the Court to do the same here and, after joining the Responsible Parties and allowing them to respond, amend the judgment to make the Responsible Parties liable for the fee award in VMware's favor. As explained below, they directed and controlled ZT's actions and inactions, including its pursuit of a patently non-meritorious infringement case and its refusal to drop its claims despite VMware's requests.

### 1.    The Responsible Parties Did Not Adequately Review Public Materials Showing that ESX 1.5 Predates the '583 Patent

It is hornbook patent law that "that which infringes if later anticipates if earlier." *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)). For that reason, if an accused product predates the allegedly infringed patent, there can be no infringement, and any infringement case on that patent would be meritless. *See Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010) ("There can be no infringement of claims deemed to be invalid.").

The Responsible Parties here plainly did not conduct "a reasonable inquiry for the purpose of filing patent infringement claims." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Before filing suit, the Responsible Parties did not bother to determine the commercial release date of ESX 1.5. Had they done so, they would have readily discovered public materials referring to ESX 1.5's commercial release on May 13, 2002. (ECF

No. 25-10.)  They also would have uncovered this, had they bothered to review the materials

cited in the claim chart appended to the Complaint.  (ECF No. 1-1 (citing VMware User's

Manual ESX Server Version 1.5 (ECF No. 13-3) at 2 ("© 2002 VMware, Inc."), available at

https://www.vmware.com/pdf/esx_15_manual.pdf).)  These blunders were unreasonable and

material; if ESX 1.5 satisfied the '583 patent's limitations, as ZT alleged, its release over a year

before the patent's filing date would render the patent invalid under 35 U.S.C. § 102(b).[11]

The Responsible Parties' declarations in opposition to an exceptional case finding, a fee

award, and sanctions confirm their involvement and culpability.  Mr. Ghorbanpoor's and

Dr. Gorrichategui's declarations confirm that they conducted an insufficient investigation.  (ECF

No. 35-5 ¶¶ 3-7; ECF No. 35-3 ¶ 2 (recognizing, pre-suit, that ESX 1.5 documents "carried a

2002 copyright date").)  When Mr. Ghorbanpoor and Dr. Gorrichategui performed their analysis,

they were respectively managing Entente and Pueblo Nuevo—the presumed beneficiaries of any

recovery by ZT in this litigation.  Dr. Gorrichategui also was running Dynamic IP, Pueblo

Nuevo's sole owner.  (Exs. 4, 5, 6.)

As for Mr. Ramey, "[i]t is hard to square [his] failure[s] with [his] obligation to conduct a

diligent pre-filing investigation."  *WPEM*, 2020 WL 555545, at *6.  Mr. Ramey's declaration

confirms that he and his firm's lawyers failed to ask even basic questions about the infringement

analysis.  Instead, they "rel[ied] on Dr. Gorrichategui for his opinions on the technical aspects of

the infringement chart."  (ECF No. 35-1 ¶ 3.)  But attorneys generally cannot outsource their

Rule 11 obligations to others, especially non-attorneys.  *See Judin v. United States*, 110 F.3d

---

[11] Under 35 U.S.C. § 102(b) (pre-AIA), "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]"

780, 784 (Fed. Cir. 1997) (Rule 11 sanctions proper where attorney "acted unreasonably in giving blind deference to his client").  Nor does Mr. Ramey contend that he and his firm's lawyers tried to assess whether ESX 1.5 was invalidating prior art before they sued VMware.

Critically, Mr. Ramey failed to perform that assessment despite being chastised for the same error two years ago.  *See WPEM*, 2020 WL 555545, at *2, 3, 6-8 (awarding $179,622 in fees against Mr. Ramey's client).  In *WPEM,* the court admonished him for "conduct[ing] *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent"— even though "the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability [the defendant] now asserts."  *Id.* at *3.  As in *WPEM,* Mr. Ramey failed to discover publicly available materials showing that ZT's infringement theories were implausible, as the accused product predated the patent and thus invalidated it.

Mr. Ramey and his law firm must be held to account for this repeated error.  *See also NetSoc, LLC v. Chegg Inc.*, No. 18-cv-10262, 2020 WL 7264162, at *7 (S.D.N.Y. Dec. 10, 2020) (fees awarded against Mr. Ramey's client); *Ramey & Schwaller, LLP v. EMED Techs. Corp.*, No. 21-cv-02036, 2021 WL 5202436, at *1 (S.D. Tex. Nov. 9, 2021) (lawsuit involving Mr. Ramey "was objectively baseless and warranted a sanction of approximately $1 million"); *Traxcell Techs., LLC v. ALE USA, Inc.*, No. 18-cv-6736, 2019 WL 6895982, at *1 (C.D. Cal. Jan. 2, 2019) (default judgment against Mr. Ramey's client where lawyers failed to read relevant pleading).

### 2. The Responsible Parties Did Not Adequately Review Public Materials Showing VMware Removed the Service Console Essential to its Infringement Theory

The Responsible Parties' failure to discover that the accused product predates the patent-in-suit was not their only failure.  They also failed to realize that VMware removed the Service Console from the ESX product in 2010, mooting any claim for damages.

ZT's claim chart mapped the "operating system" limitation of all claims of the '583 patent to ESX 1.5's service console.  (ECF No. 1-1.)  But publicly available materials also show that VMware removed that key feature of ZT's theory of infringement when transitioning to the ESXi platform in 2010.  (ECF No. 25-11 ("The Architecture of VMware ESXi") at 3 ("[T]he Linux-based *service console* has been removed . . . .") (emphasis added).)  As 35 U.S.C. § 286 limits a plaintiff's damages recovery to six years before the lawsuit, VMware's removal of the service console over ten years earlier meant that ZT could not recover damages, even assuming *arguendo* that its infringement claims had merit and the '583 patent was valid.

Declarations from the Responsible Parties confirm that they were responsible for ZT's failures.  As the manager of Pueblo Nuevo (ZT's co-manager) and Dynamic IP (Pueblo Nuevo's sole owner), Dr. Gorrichategui claimed to have been unable to verify that "VMware no longer marketed the ESX server after 2010" from "publicly available information."  (ECF No. 35-3 ¶ 8.)  Mr. Ghorbanpoor said the same.  (ECF No. 35-5 ¶ 7.)  Mr. Ramey likewise alleged that he could not promptly assess the materials that VMware provided—even though he had almost a month to do so (ECF No. 35-1 ¶¶ 9-11), and even though proof was readily available on the Internet.  (ECF No. 27-1 ¶ 9.)  The Responsible Parties should be held to account for this error as well.

### 3.    The Responsible Parties Ignored the Proof of Non-Infringement and No Damages

The Responsible Parties' approach to this case was to file first and think later, without adequately investigating the merits of any infringement claim.  The law does not permit such an approach.  *Cf. Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986) ("Rule 11 *requires* lawyers to think first and file later, on pain of personal liability.").

The Responsible Parties' approach is all the more troubling, as VMware undertook to point out these issues to Mr. Ramey and ZT before filing its motions to dismiss, for an

exceptional case, for fees, and for sanctions in the hope of avoiding unnecessary legal costs and motion practice.  After ZT filed its complaint, VMware repeatedly explained why ZT could not reasonably maintain this litigation in correspondence, and in a Zoom meeting with Mr. Ramey. (ECF No. 13-4 at 1-3; ECF No. 13-2; ECF No. 25-1 ¶¶ 5-10.)  VMware also provided ZT with the evidence itself.  (ECF No. 13-4 at 1-3, ECF No. 25-1 ¶¶ 7-10.)

Rather than respond to VMware's showing, Mr. Ramey disengaged and missed a call (which he scheduled) and then ignored correspondence from VMware's counsel.  Although Mr. Ramey ultimately dismissed the lawsuit with prejudice, the Responsible Parties' pursuit of its frivolous claims forced VMware "to file an unnecessary motion to dismiss and serve [plaintiff] with a draft Rule 11 motion for sanctions."  *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 19-cv-243, 2022 WL 1447946, at *10-11 (N.D. Tex. Feb. 9, 2022) (case exceptional and fees awarded where plaintiff refused to dismiss case despite defendant's repeated requests).

### 4.  The Responsible Parties' Unreasonable Litigation Conduct Further Supports Amending the Judgment to Make Them Jointly and Severally Liable

Even if one ignores ZT's stubborn pursuit of its meritless claims, the Responsible Parties' conduct and apparent motivation in bringing this case support awarding fees and costs.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("unreasonable manner in which [a] case [i]s litigated" conduct may justify fee award); *id.* at 554 n.6 ("motivation" relevant to fee award determination).

Throughout this action, ZT (via the Responsible Parties) continuously refused to engage and participate in its own litigation.  After VMware explained why the '583 patent was invalid and damages were unavailable via a Zoom call on June 1, 2022, Mr. Ramey skipped the follow-up meeting.  ZT and Mr. Ramey then ignored VMware's follow-up communications (on June 9 and 13, 2022 (ECF Nos. 13-2, 13-4)), VMware's draft Rule 11 motion (on June 21, 2022) (ECF

22

No. 27-2 ¶ 5; ECF No. 27-6), and VMware's motion to dismiss (on July 8, 2022) (ECF No. 13).

In the lone instance in which Mr. Ramey *did* engage with VMware's outside counsel, he was openly hostile. During the July 18, 2022 meet and confer, VMware's counsel noted VMware's pending motion to dismiss, its intent to move for sanctions, and the similarities with the prior *WPEM* case. (ECF No. 25-2 ¶¶ 7-9.) In response, Mr. Ramey cursed at VMware's counsel and accused VMware of threatening him. (*Id.*)

Courts have cited similar misconduct and unprofessional behavior as justifying awarding sanctions, fees, and costs. *Cf. Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997) (upholding sanctions for attorney who used profanity and was insulting during deposition); *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (Fed. Cir. 2015) (vacating fee award denial under Section 285 where counsel's behavior was "inappropriate, unprofessional, vexatious, and harassing") (cleaned up). As an active participant in this misconduct (indeed, *the* participant), the Court should hold Mr. Ramey and his firm accountable for his actions.

> **5.    The Responsible Parties' Structuring Their Relationships to Shield Them from Liability Also Supports Amending the Judgment to Make Them Jointly and Severally Liable**

The Responsible Parties are all, directly or indirectly, patent lawsuit filers who frequently work together. Mr. Ramey, Ramey LLP, Dr. Gorrechategui, and Dynamic IP (including its wholly owned subsidiary, Pueblo Nuevo LLP) are especially prolific patent litigation filers. They often collaborate to assert patents, creating new companies for different lawsuits. *See* Section II.A.3, *supra*. Each of those companies presumably is undercapitalized and structured in a manner to try to avoid liability for their members and owners, just like ZT.

As for Entente and Mr. Ghorbanpoor, they too are no strangers to litigation with Mr. Ramey. Both were involved with at least one of the entities subject to the *Missed Call* order. (Exs. 24, 27.) The Court should not countenance these sorts of arrangements. *See SAP*, 2021

WL 1102085, at *6 ("Allowing the judgment to stand would result in SAP being unable to obtain

substantial justice" and permit plaintiff and "others related to it would be able to circumvent the

purpose and effect of § 285.").

> **6.      Mr. Ramey and Ramey LLP's History of Unreasonable Patent
> Litigation Further Supports Holding Them Liable for the
> Court's Fee Award**

On his firm's website, Mr. Ramey is not subtle about his status as a prolific patent filer.

He has boasted of having "filed 79 new patent cases" in the first four months of 2021 and of

being "poised to be a top 5 patentee law firm in 2021."  (ECF No. 25-14.)  He further openly

announced his and his firm's "goal" of "be[ing] in the top ten law firms filing new patent cases

across the United States" in 2022.  (ECF No. 25-15.)  The numbers confirm his progress towards

those goals.  Since 2021, Mr. Ramey and his firm have filed over 300 patent cases in Texas

federal district courts alone.  (ECF No. 25-16 (253 cases in the Western District, 25 cases in the

Eastern District, 23 cases in the Northern District, and 9 cases in the Southern District).)

Such a large volume of filings substantially increases the likelihood and risk that one will

not pay careful attention to each case on one's docket—or that one will have filed a case that one

should never have filed at all.  As noted above, the Eastern District of Texas previously awarded

$179,000 in fees against a prior client of Mr. Ramey's for filing and maintaining a lawsuit on an

invalid patent.  *WPEM*, 2020 WL 555545, at *3-6, 8.  Mr. Ramey did the same here, filing a

lawsuit alleging that a prior art product infringed a patent—a legal impossibility.  *See id.* at *4-5.

As in *WPEM*, Mr. Ramey was advised of the issues with his case repeatedly and dismissed his

case with prejudice to try to thwart an exceptional case finding.  *Id.* at *2.

Mr. Ramey and his firm's lack of care and his motivation in filing and persisting with this

lawsuit warrant amending the judgment, as to make him and his firm jointly and separately liable

for the fee award here.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326-27 (Fed. Cir.

24

2011) (fee award supported by party's "history of filing nearly identical patent infringement complaints against a plethora of diverse defendants" and "act[ions] in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement").

> **E.    The Responsible Parties Should Be Jointly and Severally Liable for $92,130.35 of VMware's Attorneys' Fees Previously Awarded and for the Additional Fees Incurred Since**

VMware seeks amendment of the judgment to add the Responsible Parties so that it can pursue the $92,130.35 already awarded and the additional fees incurred trying to collect on that award.  These fees include the costs of post-judgment discovery and the fees spent in bringing this motion and the motion to join the Responsible Parties, all of which are recoverable.  *See Iris Connex*, 235 F. Supp. 3d at 862-63 (awarding defendant additional expenses and costs related to post-judgment discovery); *All. for Good Gov't*, 998 F.3d at 667 (affirming defendant's entitlement to additional fees arising from continued litigation of fee award).

As this Court has recognized, VMware's billing rates are reasonable, and the previously awarded fees were proportional to its efforts.  (ECF No. 43 at 10-11.)  Amending the judgment to add the Responsible Parties so that they may jointly and severally pay VMware's fees (both those originally awarded and those subsequently incurred) would not be unjust, but equitable.

## IV.    CONCLUSION

The Court should not allow the Responsible Parties to use an undercapitalized shell company to avoid liability for the Court's fee award.  VMware respectfully urges the Court to re-open and amend the judgment to make Dynamic IP, Pueblo Nuevo, Entente, Mr. Ghorbanpoor, Dr. Gorrichategui, Mr. Ramey, and Ramey LLP jointly and severally liable for that award.

Dated: August 11, 2023

*/s/ Richard S.J. Hung*

Richard S.J. Hung
rhung@mofo.com
425 Market Street
MORRISON & FOERSTER LLP
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522


Steven Callahan
scallahan@ccrglaw.com
Texas State Bar No. 24053122
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Facsimile:  (214) 764-8392

*Attorneys for Defendant VMware, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel for VMware, Inc. hereby certifies that a true and correct copy of this motion is being served on the following individuals and entities as soon as practicable, via personal service, and that VMWare, Inc. will file proof of service once received from VMWare, Inc.'s process server which will show the actual date(s) of service:

Dynamic IP Deals, LLC
5900 Balcones Dr, Ste 100
Austin, TX 78731

Pueblo Nuevo LLC
5900 Balcones Dr, Ste 100
Austin, TX 78731

Entente IP LLC
Harvard Business Services, inc.
16192 Coastal Hwy
Lewes, DE 19958

Ramey LLP
5020 Montrose Blvd., Ste 800
Houston, TX 77006

Carlos Gorrichategui
8319 Barberry Branch Street
Houston, TX 77055

David Ghorbanpoor
756 E. Lexington Blvd.
Milwaukee, WI 53217

William P. Ramey III
5020 Montrose Blvd., Ste 800
Houston, TX 77006

The undersigned counsel also hereby certifies that, on August 11, 2023, the foregoing document was filed via the Court's ECF system, which will send notice of the filing to counsel for Plaintiff.

*/s/ Richard S.J. Hung*
Richard S.J. Hung

## **CERTIFICATE OF CONFERENCE**

The undersigned counsel for VMware hereby certifies that attorneys for VMware

requested to meet and confer with ZT regarding VMware's motion.  ZT's lawyer stated it

opposed VMware's motion.

*/s/ Richard S.J. Hung*

Richard S.J. Hung